No. 83,872

STATE OF KANSAS, *Appellee*, v. SOLLY M. THOMPKINS, *Appellant*.

(21 P.3d 997)

Opinion filed April 27, 2001.

*Craig H. Durham*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appealed his convictions of premeditated first-degree murder and burglary. This court affirmed the burglary conviction and reversed the murder conviction. *State v. Thompkins*, 263 Kan. 602, 952 P.2d 1332 (1998) (*Thompkins I*). The case was remanded for new trial on the murder charge. Defendant was again convicted of premeditated first-degree murder. Defendant appeals, claiming the trial court erred by admitting (1) evidence that he was incarcerated immediately preceding the murder; (2) testimony of his post-arrest silence; and (3) evidence of marital discord. Defendant also claims the second trial violated his double jeopardy protection.

The facts of the murder of Frances Thompkins are set out in detail in *Thompkins I*. The facts are essentially the same facts as those in the first trial and are summarized for this opinion.

Thompkins and Frances had a tumultuous and mutually physically aggressive marriage. On two occasions, Frances had obtained restraining orders against Thompkins. Both orders were subsequently dismissed at Frances' request.

In August 1994, the couple again separated. Frances and her daughter moved into Frances' mother's home. After a violent confrontation with Thompkins on August 29, 1994, Frances applied to the district court for a third temporary protection from abuse order. Thompkins was served with a copy of the order while in the Johnson County Jail on an unrelated charge. The final restraining order, granted on October 14, 1994, ordered Thompkins not to contact Frances for 1 year.

On October 20, 1994, Frances contacted an attorney to begin divorce proceedings. There is no evidence that Thompkins was aware that Frances had filed for divorce. Some letters Thompkins wrote from jail were admitted into evidence which indicated that Thompkins was aware that Frances did not want anything to do with Thompkins again. Thompkins was released from the county jail on October 21, 1994.

On October 22, 1994, around 11:30 a.m., Frances was at Donnelly College when Thompkins arrived at the school. Thompkins approached Frances and told her that he wanted to talk with her. They went outside to a parking lot. The discussion became an ar-

gument when Frances told Thompkins she did not want anything to do with him, and she asked him to leave her alone. The two drove away from the school in Frances' car.

A short time later, Officer Rodney Green observed Frances' car parked on the side of the road. Green drove by the car. He did not notice anything unusual. When Officer Green was about 30 to 40 feet past the parked car, the car horn honked. Green put his car into reverse and returned to Frances' car. Thompkins exited the car from the passenger's side and Frances got out on the driver's side. Green noticed that Frances was injured, which probably resulted from a beating. Green pursued Thompkins.

Frances had been stabbed three times—two nonfatal wounds and one wound that cut her pulmonary artery. She had also sustained cut injuries on the palm of her right hand, some facial and head injuries, abrasions to her thighs, and some false fingernails were torn off. Frances died at the scene from blood loss.

To escape the pursuing officer, Thompkins broke into the home of an acquaintance. Officer Green and backup officers arrested him in the home. Thompkins was taken to the police station where the officers read him his *Miranda* rights. After initially refusing to provide biographical information to the officers, Thompkins made a number of statements, including that Frances was a "hypocrite of God" and that he did what he had to do to keep Frances. Thompkins stated that he had time to repent but that Frances did not and he had no reason to live because Frances was dead. Thompkins concluded he was the victim and Frances was not "all such a great person."

Thompkins was charged with one count of premeditated first-degree murder or, in the alternative, felony murder, as well as aggravated robbery, burglary, misdemeanor assault, and misdemeanor battery. The assault and battery charges were later dismissed.

At the conclusion of the preliminary examination, the district judge refused to bind over Thompkins on the premeditated first-degree murder count. Rather than appeal the dismissal of the premeditated first-degree murder charge, pursuant to K.S.A. 22-3602(b)(1), the State filed an amended information charging

premeditated murder or in the alternative felony murder, aggravated robbery, and burglary. Prior to trial in a hearing before a judge who had not presided at the preliminary hearing, the State moved to proceed under the amended information. Although the judge denied the State's motion based on res judicata, he stated that he would allow "[a]ny evidence, as long as it's relevant, probative, and part of the res gestae, whether it deals with premeditation or felony murder," and, if at the end of trial there was sufficient evidence of premeditation, he would instruct the jury on premeditated first-degree murder. We note that there is no statutory authority for a judge to proceed in this manner.

After the State and the defendant rested, the judge determined the evidence was sufficient to instruct on both premeditated first-degree murder and felony murder. The jury convicted Thompkins of premeditated first-degree murder and burglary and acquitted him of aggravated robbery, the underlying felony of the felony-murder charge.

On appeal, this court reversed Thompkins' premeditated first-degree murder conviction because the jury convicted him of an offense the judge conducting the preliminary examination had dismissed for insufficient evidence, and on which he had not been arraigned. This court concluded, under the circumstances, Thompkins' right to procedural due process had been violated. 263 Kan. at 621. The matter was remanded for a new trial on premeditated first-degree murder. 263 Kan. at 625.

A preliminary examination was held. Thompkins was bound over for trial for premeditated first-degree murder, arraigned, retried, convicted, and sentenced to life imprisonment with parole eligibility after 25 years. This appeal follows. Our jurisdiction is pursuant to K.S.A. 22-3601(b).

## Evidence of Incarceration

Prior to trial, the prosecution filed a memorandum in support of its introduction into evidence the fact that Thompkins was incarcerated. In a pretrial conference, the prosecutor stated that she intended to introduce the evidence of Thompkins' state of mind—

his "obsession" with his wife, not K.S.A. 60-455 evidence of the other crime.

The prosecutor explained that the State's theory of the case was that Thompkins killed Frances because she obtained a protection order and filed for divorce. It was at this point Thompkins realized Frances was leaving him and he could not tolerate her withdrawal from the marriage. The State contended that Thompkins' letters from jail were probative as to why he killed Frances and the fact he was incarcerated was the reason he had to wait until the day after his release to kill her. The prosecutor stated that she would not introduce evidence of why Thompkins was incarcerated and suggested that the court give a limiting instruction. The court agreed to admit the evidence to show motive and premeditation.

At trial, over defense counsel's objection, the State was permitted to introduce evidence that Thompkins was held in Johnson County and Wyandotte County jails immediately preceding the murder of Frances. The evidence was introduced by Frances' mother, who testified that she received two phone calls from Thompkins while he was in the county jails, and through letters that Thompkins sent to Frances, in which he indicated that he was in jail.

Thompkins argues this evidence denied him the right to a fair trial because its prejudicial nature outweighed its probative value. He asserts that the K.S.A. 60-455 evidence allowed the jury to speculate about the nature of his prior crimes and the fact he was in jail did not relate to the only issue before the jury—premeditation. Thompkins' argument regarding the applicability of res gestae and K.S.A. 60-455 as the basis for admitting the incarceration evidence fails to acknowledge that the trial court admitted the evidence relative to motive and opportunity, not as K.S.A. 60-455 evidence. The question is, did the prejudicial nature of the evidence outweigh its probative value?

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, [sic] is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject

to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Three requirements must be satisfied to admit evidence under K.S.A. 60-455. First, the evidence is relevant to prove one of the facts specified in the statute. Second, the fact is a disputed, material fact. Third, the probative value of the evidence outweighs its potential prejudice. For examples of prior crimes evidence admitted independent of K.S.A. 60-455, see *State v. Prosper*, 260 Kan. 743, 750-51, 926 P.2d 231 (1996) (continuing course of contacts between drug seller and customer to show relationship); *State v. Humphrey*, 258 Kan. 351, 363, 905 P.2d 664 (1995) (relationship or continuing course of conduct between parties). Letters Thompkins wrote to Frances before her death and to Frances' mother after Frances was killed were reviewed by the court prior to trial. The court was aware of the circumstances, and the date and context of the letters.

On September 20, 1994, while Thompkins was in jail, he was served with a protection from abuse order. In a letter postmarked September 21, 1994, Thompkins wrote:

"Dear Frances,

"Hello, How are you doing? I hope you are doing swell. The last time I saw you you said that you needed to go to the doctor. I hope you're okay.

"Sasha said she was going across the street to see me the last time I talked to her. I told her that I would be away for quite some time. Tell [her] that I love her and I'm sorry for being away.

"Tell your folks hello, also. I hope pops is fine and everyone doing well. Tell them I apologize for the things I've put them through.

"Frances we really need to talk. I'm sorry that it['s] taken times like these and after we have abused each other to realize all we needed to do was talk to each other. I can't come to you for more reasons than one.

"Frances, I don't know why you hurt me so as you do. I don't know why you do a lot of things that are totally uncalled for. I know I provoke you sometimes and say things I don't mean, but I never go to the law on you. You've attacked me with deadly weapons, you have tried to kill me in the past but I have never call[ed] the police on you.

"Now, thanks to your actions I will never get out of jail for 2 years.

"That's right thanks to your actions I'm now in more trouble than you could imagine. You know those orange stickers on the door at 1953, well those are courtesy of you. The sherif [*sic*] department put those there because of you.

Because I saw them, I decided to leave K.C. . . . Your actions also put me back into Wyandotte courts, I had a chance to get into a program in Johnson County that would have given me a job a place to stay, and put me through rehab. Because you filed for a restraining order that will not happen. . . . Why, the police. I don't call them on you. Your actions are the one's that deserve police intervention. I say things, but you do things. I feel you had no right. You had left why call the police. Now they have a case saying my threat[s] are also a felony which will give me another to [*sic*] years in the pen.

"I love you. You see I can say that. My actions were those of someone who needed help with a problem that was destroying him personally. Then everything that he loved. My actions did keep us down, but were not something that was directly aimed to destroy you. Mostly I hurt myself, then you and Sasha. Like you said I never listened to you. I want you to know that I heard everything you was saying. But you never heard me. Everything I did was asking you to love me and by loving me helping me.

"Look back Frances, we know I had a problem. So you say I was your problem, so you just drop me and everything [is] okay right. Once you get rid of Solly, God going to bless you in every way. Drugs made me do what I did. Why? What? How? did you do all the things you have done. Help me understand. Let me know why I have to go through all the things I'm facing alone. Why the courts are involved with what we have to settle between ourselves. No matter what the courts do Frances, it still comes down to you and me. No matter how they rule, it's still you and me."

Thompkins was released from jail on October 21, 1994. He killed Frances on October 22, 1994. In a letter postmarked October 31, 1994, to Frances' mother, written from jail where Thompkins was incarcerated on this case, Thompkins wrote, in part:

"I know nothing I say can bring her back, but I loved her more than you can know. I asked only that she talk to me everything else that happened was by her choice. In time you will come to realize this. I told her a long time ago no matter who she involved in our marriage problem in the end it still came down to me and her. May God have mercy on my soul. I'm very sorry things turned out as they have[. M]ay justice and God's will be done."

The State's theory of the case was that Thompkins, after receiving notice of the final protection from abuse order while he was in jail on an unrelated charge, determined to attempt to reconcile with Frances and to kill Frances if reconciliation did not occur. Thompkins was not able to carry out this plan until release from jail. The State contended that the fact that Thompkins was in jail when he planned the murder of Frances was relevant to prove its

case. Further, the fact that Thompkins was in jail was not admitted to prove his disposition to commit crime as the basis for an inference he committed the murder of Frances, but to prove motive and lack of opportunity until his release. Therefore, according to the State, the evidence that Thompkins was in jail immediately preceding the crime was relevant to motive and opportunity.

## Post-Arrest, Post-*Miranda* Silence

In *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), the United States Supreme Court held that the use for impeachment purposes of a defendant's silence at a time of arrest and after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment. The rule rests on the fundamental fairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. *Wainwright v. Greenfield*, 474 U.S. 284, 291, 88 L. Ed. 2d 623, 106 S. Ct. 634 (1986).

In Thompkins' first appeal, he claimed that the State had improperly introduced evidence of his post-arrest silence. Although this court reversed Thompkins' conviction on a separate issue, we addressed the issue of post-arrest silence, stating:

"During the State's direct examination of a police officer, the officer testified that he was assigned to interview Thompkins. He stated that he gave Thompkins the *Miranda* warnings. Then the officer was asked, 'Did Mr. Thompkins make any statement to you at that time?' The officer replied, 'A couple. I advised him of his rights and he told me he had nothing to say at that point.' Counsel immediately objected and moved for mistrial.

"After reviewing the record, we find that the State improperly introduced evidence that the defendant had invoked his right to silence. Unless a different factual situation exists in the next trial, the fact that the defendant invoked his right to remain silent should not be admitted into evidence." 263 Kan. at 621.

During Thompkins' second trial, the prosecutor asked the arresting officer if he read Thompkins his *Miranda* rights. The officer stated that Thompkins was read his rights in the presence of officers. The prosecutor then asked if Thompkins made any statements while the officers were filling out their paperwork. The officer replied,

"Yes ma'am. The suspect began talking. At first he didn't want to say anything, we were asking him what his name was, his address, phone number, pertinent information for our reports, he didn't want—he didn't tell us anything. And then we had found—"

At that point, the defense counsel objected and moved for a mistrial on the grounds that the witness had introduced evidence of Thompkins' invocation of his right to silence. The issue was taken up outside the presence of the jury. At the conclusion of arguments, the judge ruled:

"The Court is going to find, first of all, that the officer's statement I think was inadvertent. I can tell—well, the record should reflect that I saw this coming as soon as that question was asked and I think his response was appropriate as to what took place and I don't think that this officer intended to comment on Mr. Thompkins' silence. I don't think the State intended to elicit the answer that came in the fashion in which it did come. But the Court is taking the position that because this was inadvertent, I'm not sure how significant that would be to any of the jurors in terms of what they—any significance they would put to that.

"I'm also taking into account the fact that the defense on opening statement basically indicated to the effect that we admit that Mr. Thompkins did kill his wife and so basically the issue is the degree of the homicide basically it's my understanding of what this case is all about here today.

"I have very briefly I should state reviewed *Doyle v. Ohio*, which is the United States Supreme Court decision dealing with post Miranda silence. I have looked at *State v. Mims*, which is our Kansas Supreme Court case which basically adopted the *Doyle* rule for Kansas, also briefly looked at United States Supreme Court case called *Brecht v. Abrahamson* and one other Kansas case whose name escapes me at this moment, but if either counsel want it, I'll provide it to you. And based on all of those cases an the purpose of the rule and how it's to be interpreted, the Court's going to find this was an inadvertent error. I don't think it was significant in the context of this particular case and I am very confident that Ms. Morehead is not going to comment upon that to the jury, and I think that we should proceed and I think we should proceed on the basis that Mr. Thompkins made some unsolicited statements. That's what you wanted to get to; is that correct?"

The trial court's ruling denying a mistrial was based, in part, on *Brecht v. Abrahamson*, 507 U.S. 619, 631, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993), where the United States Supreme Court held that in determining whether habeas relief must be granted for the prosecution's use for impeachment purposes of the petitioner's post-*Miranda* silence, the standard is whether the error had substantial and injurious effect or influence in determining the jury's

verdict, rather than whether the error was harmless beyond a reasonable doubt. The *Brecht* standard of review is limited to collateral attacks on a conviction. For direct appeals, the standard of review for federal constitutional trial errors remains whether the error was "harmless beyond a reasonable doubt." See *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).

In *State v. Edwards*, 264 Kan. 177, 195, 955 P.2d 1276 (1998), this court stated:

"It is constitutionally impermissible for the State to elicit evidence at trial of an accused's post-*Miranda* silence. *Doyle v. Ohio*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240, (1976); *State v. Gadelkarim*, 256 Kan. 671, 685, 887 P.2d 88 (1994). A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent. *State v. Brinkley*, 256 Kan. 808, 820, 888 P.2d 819 (1995)."

Thompkins contends that the arresting officer's testimony that he initially did not want to say anything in response to the officer's questions about his name, address, and phone number was an unfair comment on his choice to remain silent, in contravention of the Fifth and Fourteenth Amendments and of this court's opinion following the first trial.

The State argues that Thompkins' unresponsive answers to the arresting officer's questions were not relative to his Fifth Amendment right to not provide self-incriminating evidence but rather were unresponsiveness to routine biographical data questions, which are not protected by *Miranda*. The State asserts that under these circumstances, an accused does not hold a Fifth Amendment protection against refusing to answer questions as to his name, address, or phone number, and a comment in open court regarding his refusal to answer routine biographical data is not a constitutional violation.

For authority the State relies on *State v. Garcia*, 233 Kan. 589, 664 P.2d 1343 (1983). In *Garcia*, the question was whether the taking of personal background information from an accused after he had asserted his right to counsel amounted to an interrogation in violation of his right to remain silent under *Miranda* until he

had an opportunity to consult with a lawyer. The questions asked were routine police booking questions and did not relate to the crime charged. None of the questions could reasonably be construed as being likely to elicit an incriminating response from the accused. This court held that information obtained from a defendant to complete the personal history sheet following a request for counsel does not violate the defendant's right against self-incrimination and right to counsel under *Miranda* because personal background questions do not constitute an "interrogation" within the meaning of *Miranda*. 233 Kan. at 607.

Does testimony regarding the defendant's choice to remain silent that occurs in the context of answering background questions require reversal of the defendant's conviction? Here, Thompkins was read his *Miranda* rights and then, in response to routine biographical questions, made unsolicited incriminating statements. Whether the questions were routine biographical or investigatory, the testimony regarding Thompkins' silence coming immediately after testimony that Thompkins had been advised of his right to remain silent could not be construed by the jury as an indication of guilt.

### Evidence of Marital Discord

Thompkins contends that the evidence of marital discord violated his right to confrontation. Frances' mother testified regarding the protection from abuse orders Frances had obtained against Thompkins. Later, the State introduced the protection from abuse orders as exhibits. Defense counsel objected to the admission of this evidence.

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden

of showing such abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

The Sixth Amendment to the United States Constitution gives a criminal defendant the right to be confronted with the witnesses against him or her. *Coy v. Iowa*, 487 U.S. 1012, 1015, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988). Subject to certain exceptions not applicable to this case, the Confrontation Clause guarantees the defendant the right to physically confront those witnesses who will testify against him or her in a face-to-face meeting before the trier of fact. 487 U.S. at 1016.

An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Thus, before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Bell*, 266 Kan. 896, 920, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999).

Evidence of the events at issue and other events contemporaneous with them between a defendant and a victim are admissible independent of K.S.A. 60-455 if the evidence is to establish the relationship between the parties. *State v. Taylor*, 234 Kan. 401, 407, 673 P.2d 1140 (1983). The rule in Kansas is that in a case of marital homicide, evidence of a discordant marital relationship and a wife's fear of her husband's temper is admissible to show the defendant's motive and intent. 234 Kan. at 408.

Hearsay statements made by a deceased spouse-declarant are admissible as evidence of marital discord if the trial court finds that the statements have particular guarantees of trustworthiness. *State v. Drach*, 268 Kan. 636, 1 P.3d 864.

The evidence of prior marital discord or abuse was not admitted to prove that Thompkins was abusive. The relevance of the prior protection orders pertained to the fact that the previous orders had been withdrawn by Frances after she reconciled with Thompkins; whereas the final protection order was not withdrawn by Frances because Frances had no intention of reconciling with Thompkins. The evidence was relevant to prove the State's theory that Thompkins killed Frances after realizing that Frances finally intended to

terminate the relationship. The evidence was relevant to prove that Thompkins' killing of his wife was premeditated.

The admission of the evidence of prior protection orders was not offered to prove the truth of the matter. The admission into evidence of Thompkins' statements and letters of marital discord went directly to the State's theory that Thompkins premeditated the killing of his wife when he realized that Frances had decided not to reconcile with him.

## Double Jeopardy Protection

In this court's reversal of Thompkins' conviction for premeditated murder following his first trial, Thompkins' conviction was set aside and the matter remanded to the district court for a new trial on the premeditated first-degree murder charge. *Thompkins I*, 263 Kan. at 621. Upon remand, Thompkins objected to the second proceeding on double jeopardy grounds; he renewed this objection during the hearing on his motion for new trial. The trial court overruled both objections.

On appeal, Thompkins contends that his retrial violated the constitutional protection against double jeopardy. He argues that since at the first trial the jury acquitted him of felony first-degree murder, he cannot be tried again for first-degree murder, *i.e.*, premeditated murder—an alternate theory of the same crime.

The Double Jeopardy Clause of the United States Constitution protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. The language of the Fifth Amendment to the United States Constitution guarantees no greater protection to an accused than does § 10 of the Kansas Constitution Bill of Rights. Therefore, the underlying protection contained in the Double Jeopardy Clause of the United States Constitution is contained in § 10 of the Kansas Constitution Bill of Rights. *State v. Williams*, 268 Kan. 1, 6, 988 P.2d 722 (1999).

In order to implement and define the constitutional guarantees against double jeopardy, the Kansas Legislature enacted K.S.A. 2000 Supp. 21-3107 and K.S.A. 21-3108. K.S.A. 2000 Supp. 21-3107 defines the right of the State to charge more than one offense

based on the same act and states that a defendant may be convicted of either the crime charged or an included offense not specifically charged. It formulates the limitations upon unfair multiplicity of convictions and prosecutions. K.S.A. 21-3108 covers the complex problems of former jeopardy. 268 Kan. at 6-7. K.S.A. 21-3108 pertains to this case and provides, in part:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

(a) Resulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction; or

(b) Was terminated by a final order or judgment, even if entered before trial, which required a determination inconsistent with any fact or legal proposition necessary to a conviction in the subsequent prosecution. . . .

. . . .

"(4) A prosecution is not barred under this section:

. . . .

(c) If subsequent proceedings resulted in the invalidation, setting aside, reversal or vacating of the conviction, unless the defendant was adjudged not guilty."

Whether Thompkins' protection against double jeopardy was violated is a question of law over which this court has unlimited review. See *State v. Todd,* 262 Kan. 916, 919, 941 P.2d 1374 (1997). Because Thompkins was found guilty of premeditated murder in the first trial and the conviction was reversed and remanded for a new trial by this court, K.S.A. 21-3108(4)(c) is controlling. Thompkins' rights under K.S.A. 21-3108(2)(a) and the Double Jeopardy Clauses of the state and federal Constitutions have not been violated.

Thompkins also alleges that the second trial was barred by compulsory joinder. K.S.A. 21-3108(2)(a) provides:

"A prosecution is barred if the defendant was formerly prosecuted for a different crime, or for the same crime based upon different facts, if such former prosecution:

"(a) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the compliant, indictment or information filed in such former prosecution or upon which the state then might have elected to rely; or was for a crime which involves the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution, or the crime was not consummated when the former trial began."

The compulsory joinder statute does not apply. Thompkins was formerly prosecuted for the same crime upon the same facts, which resulted in reversal on appeal. Thompkins' retrial was pursuant to

K.S.A. 21-3108, which provides that reprosecution is not barred by a former prosecution if the former prosecution resulted in reversal of the conviction.

Affirmed.