No. 92,814

STATE OF KANSAS, *Appellee,* v. BENJAMIN L. ROGERS, *Appellant.*

144 P.3d 625

Opinion filed October 27, 2006.

*Stephen B. Chapman*, of Olathe, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: A jury convicted Benjamin L. Rogers of burglary, theft, and two counts of felony murder based upon the theft. In *State v. Rogers*, 276 Kan. 497, 78 P.3d 793 (2003) (*Rogers I*), this court reversed and remanded for a new trial. The second jury convicted Rogers of two counts of felony murder and one count of theft; he received life imprisonment. This is his direct appeal seeking reversal of his convictions. Our jurisdiction is under K.S.A. 22-3601(b)(1), a maximum sentence of life imprisonment imposed.

The issues presented by Rogers on appeal, and this court's accompanying holdings, are as follows:

1. Did Rogers' convictions of felony murder on remand violate double jeopardy? No.

2. Did the law of the case bar Rogers' retrial? No.

3. Did the district court commit reversible error in allowing the admission of Rogers' transcribed testimony from *Rogers I? No.*

4. Did the district court err in refusing to submit Rogers' lesser included offense instructions to the jury? No.

Accordingly, we affirm.

## FACTS

Benjamin L. Rogers was charged with burglary, theft, and two counts of felony murder for events surrounding the break-in of an Olathe motorcycle dealership. A jury convicted both Rogers and his codefendant Kenneth Kunellis of all charges. On Rogers' direct appeal, *Rogers*, 276 Kan. at 498-99, this court reversed and remanded for retrial, setting forth the following basic facts:

"On the evening of December 11, 1999, Benjamin Rogers (Ben) was with friends Kenneth Kunellis, Kris Kunellis, and his cousin, Aaron Rogers. After de-

ciding to break into a Suzuki motorcycle dealership in Olathe, they got into Ben's passenger van and began searching for a vehicle suitable to carry stolen motorcycles. They quickly found a truck with a 14-foot enclosed cargo box at a used car dealership along I-435 at Front Street in Kansas City, Missouri. After Ben hotwired the truck, Aaron drove Ben's van and led the group to the Olathe dealership.

"When they arrived, Ben drove the stolen truck to the side of the dealership, parked, and began searching for the telephone lines that Aaron had told him would disable the business' alarm system when cut. While Ben cut the phone lines, the Kunellis brothers remained in the stolen truck, and Aaron served as a lookout in Ben's van.

"After Ben completed his task at the rear of the building, he returned to the truck, pulled back onto the street, and backed up through the parking lot to a display window. He then walked to the back of the truck and picked up the sledge hammer. When the Kunellis brothers lifted the truck's rear sliding door, Ben smashed the display window.

"The plan was to load up as many motorcycles as possible in a certain period of time, but Ben's delay in locating and cutting the phone lines limited the time available. Additionally, they had unforeseen difficulties loading the heavy motorcycles. After loading only three, Ben told the others it was time to go. As Ben drove the truck, the Kunellis brothers remained in the cargo area managing the motorcycles and holding the sliding rear door closed.

"Shortly before the group left, Reuben Feuerborn had driven into the parking lot and noticed a cargo truck backed up to a building. After the truck left, Feuerborn's wife noticed the front window of the dealership had been smashed, so Feuerborn called 911. Feuerborn informed the police of the truck's description, location, and direction of travel, and began to drive in the same direction as the departed truck.

"Olathe police dispatch records indicate the Feuerborns first reported the crime at 10:58 p.m. Two minutes later, after the Feuerborns regained sight of the truck, they informed the police it was about to enter northbound I-35. At 11:04 p.m., Officer Allen called for assistance and reported he was following the truck northbound at 119th and I-35. Once Allen was joined by Lenexa Police Officer Trevino at 11:07 p.m., he activated his emergency lights and attempted to stop the truck.

"Ben testified he was unaware of any pursuers until Officer Allen activated his lights at about 97th Street. Ben then exited northbound I-35 at 87th Street and entered southbound 69 Highway, traveling against traffic to discourage pursuers. The truck then collided with a Toyota Camry occupied by Rick Sloan and his fiance Simone Sanders. Sanders was killed instantly, and Sloan received injuries which would prove fatal hours later."

On remand, the evidence presented was largely the same. Reuben Feuerborn again testified that he drove by the Suzuki motorcycle dealership around 11 p.m., where he saw a white cargo van

pull away from a broken dealership window. After he dialed 911, Feuerborn watched the van turn north on Frontage road and then west onto Sante Fe. While Feuerborn was still on the phone with dispatch, he saw what he thought was the van traveling east on Sante Fe. Feuerborn drove up behind the van as it entered the I-35 entrance lane. His wife read the tag, and Feuerborn then re-layed the tag number to dispatch.

Officer Grant Allen received dispatch information that the van was heading northbound on I-35. He entered I-35 from 119th street and after spotting the van, he followed in his marked patrol car. The van was traveling approximately 60 miles per hour. After Officer Allen activated his emergency lights and siren, the van sped up to 70 miles per hour, exited I-35, and headed east on 87th street. The van then turned into oncoming westbound traffic. It next exited 87th street and began traveling northbound in the southbound lanes of alternate highway 69. Officer Allen U-turned when he heard that a collision had occurred. As he traveled northbound on highway 69, he could see smoke from what appeared to be a collision.

Officer Shannon Trevino testified that he also received information from dispatch about the van. He first saw the van while he was sitting in the 9900 block of northbound I-35. After beginning pursuit, he activated his lights and siren, but the cargo van did not pull over. While testifying, Officer Trevino identified Rogers as the driver of the van involved in the collision. A videotape of Officer Trevino's pursuit was also shown to the jury.

Allen Epstein, Kunellis' defense attorney John Gerstle, Dennis Pangborn, Robert Hemple II, Officer Scott Dewitt, Sergeant William James, dispatcher Angela Rayfield, David Kirts, and Dr. Michael Handler also testified. Rogers' testimony from the first trial was also admitted as an exhibit and read to the jury.

Rogers was convicted of two counts of felony murder and one count of felony theft. Additional facts are provided below as are necessary to the analysis.

## ANALYSIS

Issue 1: *Rogers' conviction of felony murder on remand did not violate double jeopardy.*

Rogers argues that the first jury acquitted him of felony murder based upon "theft by obtaining unauthorized control" of the motorcycles, and the Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. See *State v. Schoonover*, 281 Kan. 453, 463, 133 P.3d 48 (2006). He relies principally upon *In re Berkowitz*, 3 Kan. App. 2d 726, 602 P.2d 99 (1979). The State's denial relies principally upon *State v. Wesson*, 247 Kan. 639, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991).

Whether Rogers' protection against double jeopardy was violated is a question of law over which this court has unlimited review. See *State v. Thompkins*, 271 Kan. 324, 337, 21 P.3d 997 (2001). To the extent resolution of this issue necessitates interpretation of a statute, this court's review is unlimited. *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005).

Some background is important. Rogers was originally charged with burglary, theft, and two counts of felony murder based upon both crimes as underlying felonies. In the companion case of *State v. Kunellis*, 276 Kan. 461, 467-68, 78 P.3d 776 (2003), this court discussed the statutory basis for the crimes:

"K.S.A. 21-3401(b) defines felony murder as: 'the killing of a human being committed . . . in the commission of, attempt to commit, or *flight from an inherently dangerous felony* as defined in K.S.A. 21-3436.' In turn, K.S.A. 21-3436(a)(8) includes felony theft under subsection (a) or (c) of K.S.A. 21-3701 as an inherently dangerous felony. In 1995, the legislature renumbered 21-3701, without correspondingly modifying 21-3436, so that felony theft is now described as follows:

'(a) Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:

(1) Obtaining or exerting unauthorized control over property;

. . . .

(3) obtaining by threat control over property.' " (Emphasis added.)

The jury was instructed in part that in order to prove the crime of felony theft:

"2. That the defendant:
"a.  obtained unauthorized control over the property;
**OR**
"b.  exerted unauthorized control over the property."

Based upon the verdict forms for the two counts of felony murder, the original jury could have found Rogers not guilty. Or it could have found him guilty based upon (a) a killing done in the commission of or flight from a *burglary*; (b) a killing done in the commission of or flight from *theft by obtaining* unauthorized control over property; or (c) a killing done in the commission of or flight from *theft by exerting* unauthorized control over the property. The jury was instructed to mark only one box. For both counts of felony murder—for the deaths of Sloan and Sanders—the jury selected the theory of *"exerting* unauthorized control" over property. For the underlying felony theft, the jury also selected the theory that Rogers *"exerted* unauthorized control" over property. The jury also found Rogers guilty of burglary.

In Rogers' first direct appeal, this court reversed and remanded because the "theft-by-exertion" theory was improper:

"As more fully explained there [*Kunellis*, 276 Kan. 461, 78 P.3d 776 (2003)], the jury [on remand] should be instructed on the *'obtaining* unauthorized control' definition of theft and should receive no instruction on *'exerting* unauthorized control' as an option. We note that Rogers' brief appears to admit he committed the elements comprising the crime of theft while denying that the two deaths resulted from his commission of, or flight from, that crime. Accordingly, as in *Kunellis*, the need for actual retrial on the theft charge may therefore practically have been eliminated. In any event, the jury should also be clearly instructed on the flight element of felony murder pursuant to K.S.A. 21-3401(b) so it may determine if the deaths occurred during the flight from the underlying felony." (Emphasis added.) *Rogers I*, 276 Kan. at 500-01.

On remand, the jury instruction correctly limited theft to "obtain[ing] unauthorized control" over property. Based upon this single definition of theft, the second jury had the option of finding Rogers either not guilty or guilty of two counts of felony murder. Pursuant to the theft instruction, this jury convicted Rogers of two counts of felony murder and one count of felony theft.

Rogers argues that by the first jury's failure to check the verdict form boxes for other alternatives of felony murder, *i.e.*, felony mur-

der based upon burglary and felony murder based upon obtaining unauthorized control, it effectively acquitted him. He notes that the Double Jeopardy Clause of the United States Constitution protects against a second prosecution for the same offense after acquittal, and that the underlying protection contained in the Double Jeopardy Clause of the United States Constitution is contained in § 10 of the Kansas Constitution Bill of Rights. See *Thompkins,* 271 Kan. at 336.

In support, Rogers cites *In re Berkowitz,* 3 Kan. App. 2d 726. There, the defendant was charged with aggravated battery of a 10-month-old child. The jury instead convicted him of criminal injury to persons as a lesser included offense. In an unrelated case, this court later held that the statute setting forth criminal injury to persons was unconstitutionally vague and therefore void. As a result, the State confessed error and Berkowitz's conviction and sentence were vacated. It then charged him with two counts of child abuse for the same acts. 3 Kan. App. 2d at 728.

The Court of Appeals noted that defendant was acquitted of the crime chosen by the State for its charge, aggravated battery, and only convicted of a crime which proved as a matter of law to be no crime at all. It concluded that "when a conviction is set aside, any new trial is limited to the crime originally charged or, if conviction was on a lesser included offense, 'the included crime for which the defendant was convicted.' " 3 Kan. App. 2d at 746. In holding that abuse charges were therefore barred by the provisions of 21-3108(2)(a), the court noted that all of the evidence necessary to prove child abuse had been placed before the jury during the first trial. 3 Kan. App. 2d at 744.

*Berkowitz,* however, is clearly distinguishable from the present case. Rogers was not convicted of a lesser included offense at the first trial, which would effectively acquit him of the principal charge under K.S.A. 21-3108(1)(c) (A conviction of an included offense is an acquittal of the offense charged.). Rather, he was convicted of felony murder on one of several alternative theories. Further, on remand, he was tried on the same crime. *Berkowitz* is inapplicable to the present case.

The State argues that the original jury's selection of theft by exertion of unauthorized control did not amount to an acquittal of other alternatives. In support, the State cites *In re Habeas Corpus Petition of Lucas*, 246 Kan. 486, 789 P.2d 1157 (1990); *Wesson*, 247 Kan. 639 (superceded on other grounds); and *Thompkins*, 271 Kan. 324. At oral arguments, it asserted that *Wesson* was its strongest case. We agree the rationale of *Wesson* controls the result in this case. Both cases concern some measure of "alternative" proof of first-degree murder.

The *Wesson* jury considered the alleged crimes of first-degree murder—both premeditated and felony murder, with attempted sale of crack cocaine as the underlying felony—and the lesser included offenses of second-degree murder and voluntary manslaughter. Defendant was convicted of felony murder. This court held that the sale, or attempted sale, of crack cocaine was not inherently dangerous and could not serve as the underlying felony to support the felony-murder conviction. It reversed the felony-murder conviction and remanded for retrial. 247 Kan. at 647.

The court then addressed "whether the defendant can be retried for first-degree murder and any applicable lesser included offense." 247 Kan. at 647. It concluded that he could:

"*Premeditated murder and felony murder are both alternative theories to prove first-degree murder.* The jury was instructed that it could convict Wesson on either theory and if the jury had a 'reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree on either theory, then [it] must consider whether the defendant is guilty of murder in the second degree or voluntary manslaughter.'

"Finding Wesson guilty of felony murder did not adjudicate him not guilty of premeditated murder. Felony murder and premeditated murder, as instructed in this case, are not mutually exclusive. The theory behind felony murder is that the premeditation, malice, *etc.*, is transferred from the underlying felony, so the State does not have to prove premeditation. *Perhaps the jury just felt that the felony murder was a slightly stronger case than premeditated murder, but there was proof beyond a reasonable doubt for both. We simply do not know.* All that can be said is that it is not implicit in the verdict that Wesson was found not guilty of premeditated murder. *A subsequent prosecution for premeditated murder and appropriate lesser included offenses is not precluded by double jeopardy in this case.*" (Emphasis added.) 247 Kan. at 648.

In short, *Wesson* concerns different ways of proving first-degree murder, originally felony murder and, on remand, premeditated first-degree murder. Similarly, the instant case concerns different ways of proving felony murder through theft—based upon exerting unauthorized control versus obtaining unauthorized control.

Rogers also loses his argument under the rationale of a case decided 11 years after *Wesson—Thompkins*, 271 Kan. 324. Like the instant case, but unlike *Wesson*, it concerns the same species of crime both at trial and upon remand—there, premeditated first-degree murder. The defendant was charged with both felony murder and premeditated first-degree murder, with the jury convicting on the latter charge. After this court reversed and remanded for a new trial on premeditated murder, defendant alleged he had been acquitted of the felony-murder charge at the first trial and that double jeopardy barred retrial on first-degree murder, *i.e.*, premeditated murder, an alternate theory of the same crime.

This court simply held that "[b]ecause Thompkins was found guilty of premeditated murder in the first trial and the conviction was reversed and remanded for a new trial by this court, K.S.A. 21-3108(4)(c) is controlling." 271 Kan. at 337. That statute provides that "a prosecution is not barred . . . (c) [i]f subsequent proceedings resulted in the . . . reversal . . . of the conviction, unless the defendant was adjudged not guilty." In other words, this court impliedly determined that felony murder and premeditated murder were the same for double jeopardy purposes. Similarly, Rogers was convicted of felony murder, the conviction was reversed, and he was retried for the same species of crime, *i.e.*, felony murder. Under the rationale of *Thompkins*, K.S.A. 21-3108(4)(c) authorizes the retrial, and double jeopardy does not bar it.

In short, the first jury's convictions of Rogers for felony murder based upon the improperly defined theory of theft by exerting unauthorized control do not represent acquittals for the remaining theories of felony murder, *e.g.*, theft by obtaining unauthorized control or burglary. An improper conviction of a crime on a single theory does not bar retrial under the remaining alternate theories. The same crime was charged and tried in both trials.

Rogers also asserts that compulsory joinder bars retrial, again citing *Berkowitz*. Because the same crime was prosecuted in both trials, compulsory joinder does not apply. See *Thompkins*, 271 Kan. at 337-38 (discussing why compulsory joinder did not apply to that case); *State v. Weller*, 30 Kan. App. 3d 957, 958, 52 P.3d 368, *rev. denied*, 274 Kan. 1118 (2002) (*Berkowitz* inapplicable where defendant not charged with different crime in second prosecution).

Rogers was not convicted in violation of double jeopardy.

Issue 2: *The law of the case did not bar Rogers' retrial.*

Rogers next argues that the "law of the case" doctrine prevents his retrial for felony murder. He essentially alleges that because we held in *Kunellis*, 276 Kan. 461, that the jury in the first trial of Rogers and Kunellis rejected the option of flight from the *burglary* as the foundation for felony murder, no subsequent jury can use the same flight to convict of felony murder based upon theft. Among other cases, he cites *Illinois Cent. Gulf R. Co. v. International Paper*, 889 F.2d 536, 539 (5th Cir. 1989) ("Under the 'law of the case' doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.").

The State basically responds that the district court was simply complying with this court's decision on remand when it instructed on felony murder based upon flight from theft, and that our standard of review is de novo. See *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 231, 898 P.2d 1131 (1995) (whether a trial court has complied with the decision and mandate of the appellate court is purely a question of law).

As stated previously, in Rogers' first direct appeal, this court reversed and remanded for retrial due to an improper theft by exertion of unauthorized control theory. We directed that "the jury should be instructed on the 'obtaining unauthorized control' definition of theft and should receive no instruction on 'exerting unauthorized control' as an option." *Rogers I*, 276 Kan. at 500. Based upon this directive, the trial judge on remand determined that the theft and felony murder charges should be retried: "It seems from the case law, from the statute, and from the instructions to the

Court in the mandates here that this case is not a case of double jeopardy and it can be retried on the theft and felony murder as dictated by the remand." He then denied the motion to dismiss.

Rogers' argument is without merit. Admittedly, the first jury failed to find him and Kunellis guilty of felony murder based upon commission of burglary or, as he points out, flight from commission of burglary. 276 Kan. at 472. It did find him, however, guilty of felony murder for commission of a crime based upon an improperly defined theft by exertion of unauthorized control theory. This theory incorrectly invited the jury to ignore flight and to find the theft was ongoing from the time he obtained possession of the motorcycles until the time of the deaths. It did so. This verdict, which we reversed, does not foreclose the second jury from considering, as a basis for felony murder, the same flight from the now properly defined theft, *i.e.,* a theft completed before the deaths occurred.

Issue 3: *The district court did not commit reversible error in allowing the admission of Rogers' transcribed testimony from Rogers I.*

Rogers next argues that the district court erred in admitting his testimony from *Rogers I.* He claims it is hearsay and inadmissible as an exception under K.S.A. 60-460(c) because the district court did not "find that the declarant [Rogers] is unavailable as a witness at the hearing." As a fallback position, he argues that at least the portion of that testimony containing the questions by codefendant Kunellis' counsel, and Rogers' answers, was inadmissible because counsel was not a party to the litigation as required by 60-460(c). The State thoroughly responds to his arguments in six pages of briefing. Among other things, it argues that Rogers was unavailable because it cannot compel him, as the defendant, to testify.

We need not analyze every point because Rogers fails, both in his brief and at oral argument, to allege, much less establish, that this purported error prejudiced him in any way. In *State v. Clark,* 263 Kan. 370, 376-77, 949 P.2d 1099 (1997), where this court determined that statements had been erroneously admitted into evidence, we stated:

"However, errors that do not affirmatively cause prejudice to the substantial rights of the complaining party do not require reversal where substantial justice

has been done. *State v. Johnson*, 255 Kan. 140, 148, 871 P.2d 1246 (1994). *The defendant is unable to point to any way that the admission of the hearsay evidence caused prejudice. . . .* The admission of hearsay by the trial court did not prejudice the substantial rights of the defendant." (Emphasis added.)

Even if Rogers alleged such prejudice, he would lose his argument because his substantial rights were not prejudiced. Independent of his own *Rogers I* testimony, the unrefuted evidence establishes that Feuerborn observed the truck containing the stolen motorcycles leave the scene of the break-in; that he telephoned law enforcement with the truck description and tag number; that within minutes of Feuerborn's call law enforcement officers followed the truck until it collided with the victims' car and killed them; and that Rogers was the driver of the truck.

Issue 4: *The district court did not err in refusing to submit Rogers' lesser included offense instructions to the jury.*

Finally, Rogers argues that the district court erred in refusing his request to instruct the jury on involuntary manslaughter and vehicular homicide, several of felony murder's lesser included offenses. He specifically argues that the evidence of flight was weak. The State responds that the evidence was strong and the lesser included offense instructions were not warranted.

Rogers and the State both acknowledge the following:

"A trial court is required to instruct on lesser included offenses of felony murder only when the evidence of the underlying felony is weak, inconclusive or conflicting. [Citation omitted.] This is because '[a] defendant's commission of the underlying felony supplies elements which must be absent from the lesser degrees of homicide, and a jury should be instructed only on lesser offenses of which the defendant reasonably may be convicted.' [Citation omitted.]" *State v. Boyd*, 281 Kan. 70, 90, 127 P.3d 998 (2006).

The district court denied Rogers' request for three reasons. First, because the Kansas law of lesser included offense instructions regarding weak evidence in felony murder cases applies only to the underlying felony, *i.e*, theft. Second, because flight is not an element of theft. Third, because the evidence of theft was strong. On appeal, both parties essentially ask us to include flight in our evidentiary consideration of jury instructions for lesser included offenses of felony murder. As Rogers argues:

"Contrary to the district court's logic, there is no logical basis for a distinction between weakness on flight, or weakness on the elements of theft. This jury's decision on guilt or innocence turned precisely on the issue of whether or not the deaths occurred during flight from the theft. Judge Anderson acknowledged that flight was the issue in this case. The prosecutor acknowledged that flight was the issue in the case. The jury's first question after beginning deliberations was for the definition of the word 'flight' or 'fleeing.'"

This court recently stated that "the rule that a trial court is required to instruct on lesser included offenses of felony murder only when the evidence of the underlying felony is weak, inconclusive, or conflicting . . . pertains to evidence that the *underlying felony was committed.*" (Emphasis added.) *Boyd,* 281 Kan. at 92. We conclude that the rule should be expanded to include evidence of flight, when, as in the instant case, flight is an issue and may determine whether felony murder has indeed occurred. As support, we note that flight can be an element of felony murder, just as an underlying felony is a required element. See K.S.A. 21-3401(b) (felony murder defined as "the killing of a human being committed . . . (b) [i]n the commission of, or attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto"). For purposes of our rule regarding lesser included offense instructions, there is no valid reason for a distinction.

The question remains: was the evidence of flight in this case weak? Rogers admits that he was fleeing at the time of the accident that killed the two victims, as he was then aware of law enforcement officers' pursuit. He argues, however, that from the time he left the motorcycle dealership until he became aware of the pursuit, he was not "in flight." He apparently argues that this "no flight," coupled with the later "flight," constitutes weak evidence of flight, entitling him to a lesser included offense instruction. We disagree for several reasons.

First, flight has been defined simply as "[t]he act or an instance of fleeing, esp. to evade arrest or prosecution." Black's Law Dictionary 670 (8th ed. 2004). Rogers has cited no case law, and we have found none in Kansas, to support his theory. Indeed, in Kansas, this court has held that in the analogous instance where

flight has been used as evidence of the defendant's consciousness of guilt, "[a]ctual knowledge by a defendant that he is being sought for the crime in question is not a prerequisite to the admission of evidence of flight but merely goes to the weight to be given such evidence by the trier of facts." *State v. Walker*, 226 Kan. 20, Syl. ¶ 4, 595 P.2d 1098 (1979); accord *State v. Ross*, 280 Kan. 878, Syl. ¶ 2, 127 P.3d 249 (2006). We conclude Rogers was in flight when he left the dealership, whether he was aware of any law enforcement pursuit or not.

Second, the evidence established that Rogers then remained in flight. The Feuerborns first reported the crime at 10:58 p.m. when Rogers left the dealership. Two minutes later they regained sight of the truck and informed police it was about to enter northbound I-35. Four minutes later, Officer Allen reported he was following the truck. Shortly after 11:07 p.m., he activated his emergency lights and attempted to stop the truck. The collision occurred soon thereafter. *Rogers*, 276 Kan. at 499.

Accordingly, the evidence that Rogers was in flight from the commission of the theft at the time of the accident is not weak. Rogers therefore was not entitled to lesser included offense instructions, and the district court did not err in refusing to give them, albeit for slightly different reasons. See *ARY Jewelers v. Krigel*, 277 Kan. 464, 477-78, 85 P.3d 1151 (2004) (district court decision that reaches the right result will be upheld on appeal even though it relied upon the wrong ground or assigned erroneous reasons for its decision).

Affirmed.