No. 94,187

STATE OF KANSAS, *Appellee,* v. RAY J. STEVENS, *Appellant.*
(172 P.3d 570)

Opinion filed December 7, 2007.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause, and *Heather Cessna*, of the same office, was on the briefs for appellant.

*Brian P. Duncan*, assistant county attorney, argued the cause, and *Razmi M. Tahirkheli*, assistant county attorney, *John Gutierrez*, county attorney, and *Phill Kline*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: Ray Stevens appeals his conviction for operating or attempting to operate his vehicle under the influence of alcohol. The Court of Appeals affirmed his conviction, with one judge dissenting. See *State v. Stevens*, 36 Kan. App. 2d 323, 138 P.3d 1262 (2006). We granted Stevens' petition for review and the State's cross-petition for review; our jurisdiction is pursuant to K.S.A. 20-3018(b).

Between Stevens and the State, they present seven issues on appeal. Those issues, and our accompanying holdings, are as follows:

1. Did the district court err in failing to require the State to elect either (a) operating or (b) attempting to operate as the theory of prosecution, thus depriving Stevens of his right to a unanimous jury verdict? No.
2. Did the district court err in refusing to grant Stevens' motion for a new trial based on the admission of the deficient breath test results? No.
3. Did the district court err in refusing to grant a continuance based upon the State's failure to produce records of the deficient breath sample as well as the maintenance records of the Intoxilyzer 5000? No.
4. Does sufficient evidence support Stevens' conviction for driving under the influence in Crawford County? Yes.
5. Did the district court err in admitting Stevens' confession into evidence? No.

6. Did cumulative error deprive Stevens of his right to a fair trial? No.
7. Did the district court err in ordering Stevens to pay attorney fees to the Board of Indigents' Defense Services (BIDS) before taking into account his financial situation? Yes.

Accordingly, the judgment of the district court is affirmed regarding issues 1-6; the judgment regarding issue 7 is reversed and remanded for further proceedings as directed in the opinion. We affirm the Court of Appeals.

## FACTS

During the afternoon of April 18, 2004, Officer Dave Justice of the Pittsburg Police Department was called to a residence for a criminal trespass complaint. Upon arrival, Justice saw a Jeep parked in the street with two people sitting in its front seat. As he approached, he saw Ray Stevens exit the driver's side and stumble toward the rear of the Jeep in the direction of the residence.

Justice unsuccessfully attempted to get Stevens' attention as he walked toward the front door of the residence. While Stevens knocked, Justice moved directly behind him and again yelled to get his attention. As Stevens turned around, Justice informed him that the resident of the house did not want him on the property.

Justice noticed a strong odor of alcohol coming from Stevens. When asked, Stevens admitted he had been drinking. He refused, however, to explain why he got out of the driver's side of the Jeep. After backup arrived, Justice approached the Jeep to contact the passenger. Justice then saw alcoholic beverage cans in both the driver's side and passenger's side door cup holders. He also noticed a brown paper bag that appeared to contain a liquor bottle with the seal broken. When the passenger handed Justice the bag, he discovered it contained a half-empty bottle of whiskey. The Jeep key was in the ignition.

At that time, Justice believed that Stevens was under the influence of alcohol. According to Justice, Stevens stated that he had driven the vehicle to the residence. Initially, Stevens agreed to take a field sobriety test. Justice first asked Stevens to touch the top of Justice's pen with his right index finger. Stevens smirked and at-

tempted to touch the pen with his small finger; however, he missed the pen. When Justice asked him to redo the test, Stevens was able to touch the pen with the correct finger. Justice then asked Stevens to follow a pen with his eyes. Stevens, however, only focused on Justice and refused to follow the pen. Stevens also refused to complete balance tests.

Justice placed Stevens under arrest and took him to the police station. There, after Justice read Stevens the implied consent advisory, Stevens submitted to an Intoxilyzer 5000 test. Although Stevens agreed to take the breath test, he initially refused to blow into the machine. When Stevens did blow, he failed to provide enough air for a sufficient sample. According to the machine printout, Stevens blew a "deficient sample" with a .205 blood alcohol concentration.

The next day Stevens was charged with operating or attempting to operate a motor vehicle while under the influence of alcohol in violation of K.S.A. 2006 Supp. 8-1567(a)(3), and transporting an open container of alcoholic beverage in violation of K.S.A. 8-1599.

The same day, defense counsel filed a motion to suppress the breath test. The court denied the motion on present showing, allowing Stevens to later raise the issue.

The case proceeded to jury trial on September 23, 2004. Prior to voir dire, defense counsel asked that the State be required to choose its theory of prosecution, *i.e.*, either operating or attempting to operate a vehicle while under the influence. The court, however, allowed the State to proceed under both theories.

Over defense counsel's objection, the court also admitted the deficient sample breath test results during the testimony of Sergeant David Roughton, the sergeant in charge of records and maintenance for the Intoxilyzer 5000.

Stevens was convicted of operating or attempting to operate a vehicle while under the influence of alcohol but was acquitted of the open container charge. Stevens moved for a judgment of acquittal or, alternatively, for a new trial; the district court denied the motions. He was subsequently sentenced to 12 months' probation with an underlying jail term of 12 months.

A majority of a Court of Appeals panel affirmed Stevens' conviction. The majority held: (1) The deficient breath test was admissible to establish a conviction under K.S.A. 2006 Supp. 8-1567(a)(3); (2) the district court did not err in refusing to grant a continuance or new trial based upon the deficient sample; (3) driving or attempting to drive while under the influence is an alternative means situation and the evidence was sufficient to support either means; (4) Stevens' voluntary statements to the officer that he had been drinking and, later, that he had driven to the residence were elicited during the investigational phase and not while Stevens was in custody; (5) there was no cumulative error; and (6) a district court is unable to adequately determine a defendant's ability to pay attorney fees to BIDS when it fails to first tax a specific amount claimed by BIDS. Because of the BIDS issue, the majority remanded the case for further proceedings. Then Judge, now Justice, Johnson dissented, arguing the evidence was insufficient to support the conviction upon the alternative means of attempting to operate a vehicle. *Stevens*, 36 Kan. App. 2d at 344-48.

## ANALYSIS

Issue 1: *The district court did not err in failing to require the State to elect either (a) operating or (b) attempting to operate as the theory of prosecution.*

Stevens argues that the district court erred in failing to require the State to elect its theory of prosecution, thus depriving him of his right to a unanimous jury verdict. "This court exercises unlimited review over issues of jury unanimity. [Citation omitted.]" *State v. Kesselring*, 279 Kan. 671, 678, 112 P.3d 175 (2005).

The trial court allowed the State to proceed under a charge of operating or attempting to operate a motor vehicle while under the influence of alcohol in violation of K.S.A. 2006 Supp. 8-1567(a)(3), which provides in relevant part:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

. . .

(3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle."

Consistent with the statute, the jury was instructed as follows:

"The defendant is charged with the crime of *operating or attempting to operate* a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant *drove or attempted to drive* a vehicle;
2. That the defendant, *while driving or attempting to drive*, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle; and
3. That this act occurred on or about the 18th day of April 2004, in Crawford County, Kansas." (Emphasis added.)

As noted by the Court of Appeals, Stevens did not object to the instruction. 36 Kan. App. 2d at 336. In fact, he suggested a similar instruction. Further, he did not request a unanimity instruction, nor did he object to the failure to give it. This court uses a clearly erroneous standard to review a party's failure to object to a given instruction and to review a trial court's failure to give an instruction where the party neither requested it nor objected to its omission. K.S.A. 2006 Supp. 22-3414(3); *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). Instructions are clearly erroneous only if the appellate court is firmly convinced that there is a real possibility that the jury would have rendered a different verdict if the trial error had not occurred. *Cooperwood*, 282 Kan. at 581. But obviously if there is no error, there is no need to apply the clearly erroneous standard. See generally *State v. Sappington*, 285 Kan. 158, 163-65, 169 P.3d 1096 (2007).

Pursuant to K.S.A. 22-3421, a criminal defendant has the right to a unanimous jury verdict. Although Stevens failed to request a separate jury instruction, he suggests that because operating or attempted operating were set out together, there is no way to know of which act the jury actually convicted him.

As also noted by the Court of Appeals, Stevens' argument suggests he views this as a multiple acts case. In such cases, several acts are alleged and any one of them could constitute the crime charged; the jury must be unanimous as to which act or incident constitutes the crime. *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

Our threshold question is whether we are presented with a multiple acts case. This determination is a question of law over which an appellate court exercises unlimited review. 284 Kan. 239, Syl. ¶ 1. An appellate court asks whether the defendant's conduct is part of one act or represents multiple acts which are separate and distinct from each other. " 'Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by a "fresh impulse." ' " *Kesselring*, 279 Kan. at 683. Here, Stevens' conduct did not consist of multiple acts; rather, it was a continuing course of conduct not motivated by a fresh impulse. Thus, a further multiple acts analysis is unwarranted.

In an alternative means case, on the other hand, a single offense may be committed in different ways. There must be jury unanimity as to guilt for the single crime charged, but not as to the particular means by which the crime was committed. See *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994). Like the Court of Appeals, we conclude that we have an alternative means case: violation of K.S.A. 2006 Supp. 8-1567(a)(3) by more than one means (operating or attempting to operate).

As another preliminary consideration, we note that prior to oral argument Stevens filed a Rule 6.09 (2006 Kan. Ct. R. Annot. 45) letter of additional authority. Among other things, he argued that the charge against him was duplicitous. As this court explained in *State v. Daniels*, 278 Kan. 53, 71-72, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004):

" 'A complaint which charges two separate and distinct offenses in a single count is duplicitous. Duplicity is the joinder of two or more separate and distinct offenses in the same count, not the charging of a single offense involving a multiplicity of ways and means of action. Duplicitous charging is a bad practice because it confuses the defendant as to how he or she must prepare a defense, and it confuses the jury.' [Citation omitted.]"

In support, Stevens points out that for other crimes, attempt is not part of the definition of the crime; rather, it is a separate statute. For example, Stevens notes that the focus of K.S.A. 2006 Supp. 65-4159 is the successful manufacture of a controlled substance,

rather than a mere overt act toward the perpetration of a crime as required under the attempt statute, K.S.A. 2006 Supp. 21-3301.

As added support, Stevens cites *Schad v. Arizona*, 501 U.S. 624, 632, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991). There, the defendant challenged Arizona's characterization of first-degree murder as a single crime for which a verdict was not limited to any one statutory alternative; he argued that premeditated murder and felony murder are separate crimes for which the jury must return separate verdicts. 501 U.S. at 630-31. We acknowledge that the *Schad* Court recognized that there is a "point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses." 501 U.S. at 633. However, that point was not reached in *Schad* under Arizona's scheme.

Nor is that point reached in the instant case. In *Schad,* Arizona agreed with Kansas and many other states that

" 'it was not necessary that all the jurors should agree in the determination that [1] there was a deliberate and premeditated design to take the life of the deceased, or [2] in the conclusion that the defendant was at the time engaged in [a] the commission of a felony, or [b] an attempt to commit one: it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.' [Citations omitted.]" 501 U.S. at 641 (citing, among other cases, *State v. Wilson,* 220 Kan. 341, 552 P.2d 931 [1976]).

The Court concluded that "the jury's options in this case did not fall beyond the constitutional bounds of fundamental fairness and rationality." 501 U.S. at 645.

We similarly observe that in Kansas' first-degree murder statute, K.S.A. 21-3401, the legislature has defined that crime as the killing of a human being committed (1) intentionally and with premeditation; or (2) (a) in the commission of, or (b) in the attempt to commit an inherently dangerous felony. Approval of this specific statutory approach was inherent in *Schad.* We therefore conclude that if a first-degree murder conviction can constitutionally stand when a jury has not been required to specify whether a defendant was convicted of committing intentional premeditated murder or

felony murder simply because a death occurred during the attempt to commit a particular felony, then a fortiori the instant statute allowing conviction of mere DUI—for commission (operating) or for mere attempt—is also constitutional. Our conclusion necessarily rejects Stevens' *Daniels*-based argument that the charge, and resultant jury instruction, is duplicitous.

Now that we have concluded that the DUI statute, like the first-degree murder statute, provides alternative means of committing the same crime, the issue becomes whether sufficient evidence supports both means of committing that crime. See *Kesselring*, 279 Kan. 671, Syl. ¶ 2 (Unanimity is not required as to the means by which the crime was committed so long as substantial evidence supports each alternative means.). The court must determine whether a rational trier of fact could have found that each means was proved beyond a reasonable doubt; the court must also review all the evidence in the light most favorable to the prosecution. As we stated in *Kesselring*, 279 Kan. at 679:

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all of the evidence, *viewed in the light most favorable to the prosecution*, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" (Emphasis added.)

After reciting this standard, the *Kesselring* court held "there was sufficient evidence to support a rational jury's belief that the defendant committed first-degree murder under either a theory of premeditation or felony murder." 279 Kan. at 679; see also *Timley*, 255 Kan. at 290 ("There was sufficient evidence, *viewed in the light most favorable to the prosecution,* that a rational factfinder could have found Timley guilty beyond a reasonable doubt of the crimes of rape and aggravated criminal sodomy *either by the means of force or by the means of fear."*). The same standard of review applies in the area of attempted crimes. See *State v. Peterman,* 280 Kan. 56, 59-60, 118 P.3d 1267 (2005).

## Operating

Officer Justice saw Stevens exit the driver's side of the Jeep and stumble toward its rear in the direction of the residence. While

speaking with Stevens, Justice noticed a strong odor of alcohol coming from him. When asked, Stevens admitted he had been drinking. Stevens refused, however, to explain why he got out of the driver's side of the Jeep. Justice saw the key in the ignition and an alcoholic beverage can in both the driver's side and passenger's side door cup holders. He also noticed a brown paper bag that appeared to contain a liquor bottle with the seal broken; when it was handed to him, he observed that it contained a half-empty whiskey bottle.

According to Justice, Stevens stated that he had driven the Jeep to the house. He did not reside there. Initially, Stevens agreed to take field sobriety tests; however, he was unable to complete the tests. Stevens submitted to an Intoxilyzer 5000 test; the deficient sample breath test registered an alcohol concentration of .205.

Based upon the foregoing, when viewed in the light most favorable to the prosecution, sufficient evidence supports Stevens' conviction under the "operating" means.

### Attempting to Operate

Based upon the same evidence, the Court of Appeals majority concluded that sufficient evidence also supported the "attempt to operate" means. The majority noted that " '[m]ovement of the vehicle is not required in order to convict a defendant of DUI under the theory that defendant *attempted* to operate the vehicle.' [Citation omitted.]" 36 Kan. App. 2d at 337-38.

Judge Johnson disagreed:

"The majority is persuaded that the following facts are substantial evidence that Stevens tried but failed to drive his vehicle: (1) Stevens was occupying the driver's seat when Officer Justice arrived; (2) another person occupied the passenger seat; (3) the key was in the vehicle ignition; and (4) the vehicle was parked in front of another person's residence. I do not perceive these facts as creating a reasonable inference of a failed attempt to operate the vehicle. See *State v. Johnson,* 33 Kan. App. 2d 490, 502, 106 P.3d 65 (2004) (an inference may not rest upon another inference). To the contrary, the established fact that Stevens' vehicle was parked in front of another's residence creates the inference that Stevens was *successful* in driving his vehicle to that location. Stevens' actions in exiting the vehicle, proceeding to the front door of the residence, and knocking on the door support the inference that he drove there, rather than that he failed to drive. Indeed, that is the inference the prosecutor wanted the jury to draw when he argued that the

more 'reasonable way to look at it is [Stevens] was in front of a house where he was not welcome, he just drove up, he was just jumping out wanting to make contact because he was not aware that he was not welcome there.'

"Unlike the situation in [*State v.*] *Kendall,* [274 Kan. 1003, 58 P.3d 660 (2002)], Stevens' vehicle was not in the middle of the street, its engine was not running, its transmission was not in neutral, and its headlights and brake lights were not illuminated. Further, in closing argument, the prosecutor did not even suggest that Stevens made a failed attempt to drive the vehicle. When we review an alternative means case, we must consider whether a rational trier of fact could have found each alleged means of committing the crime to have been proved by the State beyond a reasonable doubt. See *State v. Morton,* 277 Kan. 575, 580, 86 P.3d 535 (2004). Here, the State failed to prove beyond a reasonable doubt that Stevens attempted to operate his vehicle, as opposed to actually operating the vehicle. Therefore, I would reverse and remand for retrial upon the sole means of committing DUI by operating a vehicle while under the influence." 36 Kan. App. 2d at 347-48.

We first observe that the dissent's reliance upon *Morton* fails to fully appreciate an important appellate court consideration, *i.e.*, we must review the evidence in the light most favorable to the prosecution. Additionally, we must not reweigh the evidence or pass on the credibility of the witnesses. *Kesselring,* 279 Kan. 671, Syl. ¶ 3 (When reviewing the sufficiency of the evidence on alternative means, "this court will not reweigh the evidence. It is the jury's function, not ours, to weigh the evidence and determine the credibility of witnesses.").

We next observe that an attempt to commit a crime does not require much effort. K.S.A. 2006 Supp. 21-3301(a) defines attempt as "*any* overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." (Emphasis added.) See PIK Crim. 3d 55.01. In *Peterman,* 280 Kan. at 60-61, we acknowledged that

"Kansas law does not provide definitive rules as to what constitutes an overt act for attempting crime. The overt act necessarily must extend beyond mere preparations made by the accused and must approach sufficiently near to the consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. *State v. Hedges,* 269 Kan. 895, 905, 8 P.3d 1259 (2000)."

The *Peterman* court also observed: "Each case is dependent on its particular facts and the reasonable inferences the jury may draw from those facts." 280 Kan. at 61 (citing *State v. Garner*, 237 Kan. 227, 238, 669 P.2d 468 [1985]).

We conclude that the charge of an attempt to operate a vehicle under the influence of alcohol is sufficiently supported by the evidence. Stevens was sitting in the driver's side of the parked Jeep with the key in the ignition and another individual in the front. Alcoholic beverage containers were found inside the jeep. Stevens admitted he had been drinking and admitted further that he had driven the Jeep to the house where he did not reside. He was unable to satisfactorily complete the field sobriety tests and refused to explain why he had exited the Jeep from the driver's side. In viewing this evidence in the light most favorable to the prosecution, a jury could have reasonably inferred that by placing or leaving the key in the ignition and leaving the passenger in the Jeep's front seat as he knocked on the door, Stevens had intended to drive away from a house, where clearly he did not reside, within a short period of time after exiting the driver's seat. The key's placement, together with his consumption of alcoholic beverages, constituted the overt acts, *i.e.*, steps in a direct movement toward the completed crime. The arrival of Officer Justice prevented the crime's execution.

Issue 2: *The district court did not err in refusing to grant Stevens' motion for a new trial.*

Stevens next argues that the district court erred in denying his motion for a new trial based upon the admission of the deficient breath test results into evidence.

The decision to grant or deny a motion for a new trial rests in the sound discretion of the district court. *State v. Flynn*, 274 Kan. 473, 513, 55 P.3d 324 (2002). Judicial discretion is abused only when no reasonable person would take the view of the district court. The party who asserts abuse of discretion bears the burden of showing it. See *State v. Moses*, 280 Kan. 939, 945, 127 P.3d 330 (2006). The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions. *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005).

Moreover, resolution of this issue also necessitates interpretation of K.S.A. 2006 Supp. 8-1567 and K.S.A. 2006 Supp. 8-1013. Interpretation of a statute is a question of law over which this court exercises unlimited review. *State v. Rogers*, 282 Kan. 218, 222, 144 P.3d 625 (2006).

In Stevens' pretrial motion to suppress the breath test results, he claimed that the deficient sample was not reliable evidence. The district court determined that it lacked sufficient evidence to determine whether the amount of the alcohol concentrate should be excluded. Although the court denied the motion, it granted Stevens "leave to present evidence to the court, either prior to trial or at trial, that the amount of alcohol concentrate shown by the Intoxilyzer should be excluded."

The court later found:

"It is a deficient sample and it—and it is because of its deficiency, the measurement of the alcohol blood content is skewed, [if] the machine doesn't measure it correctly because it is deficient then it is inadmissible evidence. The jury can't speculate on that. You've [the State has] got to prove to me before I'm ever going to let you present that that [*sic*] you've got to lay a foundation and prove that even though he blew a deficient sample into the machine the machine is certified, it is operated by someone who knows what they are doing and we can depend on the sample."

The State introduced the deficient sample breath test results into evidence during the testimony of Sergeant Roughton, the officer in charge of records and maintenance of the Intoxilyzer 5000. The court held:

"Okay. Well, the—this witness has presented sufficient certification of the Intoxilyzer. The previous witness has testified that he personally observed the certified operator, and the officer is not here, and observed the protocol and so a proper foundation has been laid so the objection is overruled, subject to your cross-examination."

Post-trial, Stevens relied upon the then recently decided case of *State v. Herrman*, 33 Kan. App. 2d 46, Syl. ¶ 1, 99 P.3d 632 (2004). There, the Court of Appeals held that a deficient sample breath test could not be admitted as "other competent evidence" during a prosecution under subsection (a)(1) of 8-1567, which states:

"No person shall operate or attempt to operate any vehicle within this state while [t]he alcohol concentration in the person's blood or breath *as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto,* is .08 or more." (Emphasis added.)

The district court denied Stevens' motion for a new trial, holding that *Herrman* was not controlling because Herrman had been prosecuted under subsection (a)(1) of 8-1567, whereas Stevens was prosecuted under subsection (a)(3). Subsection (a)(3) simply states: "No person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." The court concluded that under the plain statutory language, a partial sample breath test is admissible so long as the defendant is not prosecuted under (a)(1). The Court of Appeals agreed.

Like the Court of Appeals, we begin by noting that K.S.A. 8-1005 addresses evidence that can be used in a criminal prosecution for operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both. K.S.A. 8-1006(a) provides, however, that "[t]he provisions of K.S.A. 8-1005, and amendments thereto, shall not be construed as limiting the introduction of *any other competent evidence* bearing upon the question of whether or not the defendant was under the influence of alcohol or drugs, or both." (Emphasis added.)

As used in the statutes relating to driving under the influence of alcohol or drugs, " '[o]ther competent evidence' includes: (1) [a]lcohol concentration tests obtained from samples taken two hours or more after the operation or attempted operation of a vehicle; and (2) *readings obtained from a partial alcohol concentration test on a breath testing machine*." (Emphasis added.) K.S.A. 2006 Supp. 8-1013(f). The Court of Appeals has held that "a deficient breath test [is] equated with a 'partial alcohol concentration test,' as used in K.S.A. 8-1013(f)(2)." *Herrman,* 33 Kan. App. 2d at 49 (citing *State v. Maze,* 16 Kan. App. 2d 527, 533-34, 825 P.2d 1169 [1992]).

We agree with the lower courts that the plain language of the statute defeats Stevens' argument. See *State v. Denney,* 283 Kan.

781, 789, 156 P.3d 1275 (2007) (When language is plain and unambiguous, there is no need to resort to statutory construction.). Unlike subsection (a)(1) of 8-1567, subsection (a)(3) does not limit the introduction of "other competent evidence" to that found in 8-1013(f)(1), *i.e.*, late-taken samples. Thus, the "other competent evidence" contained in 8-1013(f)(2), *e.g.*, readings obtained from a partial alcohol concentration test on a breath testing machine—which includes a deficient sample—may be admissible in a prosecution under (a)(3). Accordingly *Herrman,* where (a)(1) was at issue, is also easily distinguishable. For these reasons, the district court did not err in introducing evidence of the deficient sample nor did it abuse its discretion in denying the motion for new trial.

Stevens also argued to the Court of Appeals that allowing a deficient sample breath test into evidence would render subsection (a)(1) meaningless. He opined that the State could avoid the limitations of (a)(1) by simply charging under (a)(3) instead. The Court of Appeals disagreed, stating:

"Under K.S.A. 2005 Supp. 8-1567*(a)(1)*, the State needs only to prove that the alcohol concentration in a person's blood or breath is .08 or more to show that a person is in violation of this subsection. The language under this particular subsection indicates that the legislature intended for the alcohol concentration to be proved by a test conducted on a *complete* sample of an individual's blood or breath. Under K.S.A. 2005 Supp. 8-1567*(a)(3)*, however, the State can use a variety of evidence to show that an individual was driving under the influence of alcohol to a degree that rendered him or her incapable of safely driving a vehicle. A *deficient* sample breath test, while not conclusive evidence that an individual was committing the crime of driving under the influence of alcohol, can be used in conjunction with a variety of circumstances to establish a DUI violation under K.S.A. 2005 Supp. 8-1567(a)(3)." (Emphasis added.) 36 Kan. App. 2d at 329-30.

We agree with the Court of Appeals' conclusion that "Stevens' argument on this issue really lies with the legislature." 36 Kan. App. 2d at 330.

Issue 3: *The district court did not err in refusing to grant a continuance.*

Stevens alternatively asserts that the district court erred in refusing to grant a continuance after ruling that the breath test results would be admitted into evidence. In a criminal case, the decision

to continue a case lies within the sound discretion of the district court. *State v. Cook*, 281 Kan. 961, 986, 135 P.3d 1147 (2006). Judicial discretion is abused only when no reasonable person would take the view of the district court, and the party who asserts abuse of discretion bears the burden of showing it. See *Moses*, 280 Kan. at 945. The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions. *White*, 279 Kan. at 332.

Prior to trial, the district court ordered the State to furnish Stevens copies of all relevant information that would aid in the preparation of a defense, including copies of scientific reports or lab reports. The State, however, failed to deliver a copy of the deficient sample breath test results to Stevens until the morning of trial. Defense counsel admitted that he had previously known about the deficient test results and was not prejudiced by this late receipt. He argued, however, that he was prejudiced by the State's failure to produce maintenance records of the Intoxilyzer 5000 machine. According to him, the State's failures required the court either to exclude the witnesses from testifying about the deficient sample or to grant a continuance if one was requested.

The district court denied the motion on present showing, but ordered the State to immediately turn over the machine's records; the State did so.

Before the State called its first witness, the court revisited the issue and asked how Stevens was prejudiced by not receiving the maintenance records. Apparently, after having reviewed the just-received records, defense counsel noted that the officer performing the test failed to record it in a log book. Based upon this failure, counsel argued that he would have called an expert to say that the accepted procedure for all tests, including a deficient sample test, is to record the test in a log. As with the test results, the district court held that the State's delay in providing the maintenance records did not prejudice Stevens. The court denied Stevens' similar post-trial motions alleging prejudice by the State's delay in providing documents.

In affirming the district court, the Court of Appeals discussed the State's duty to disclose exculpatory evidence, as stated by this

court in *State v. Carmichael*, 240 Kan. 149, 152, 727 P.2d 918 (1986):

" 'A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is material to the guilt or innocence of the defendant. Suppression of such evidence is a violation of the defendant's Fourteenth Amendment due process rights. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. To justify a reversal of a conviction for failure to disclose evidence, the evidence withheld by the prosecution must be clearly exculpatory and the withholding of the evidence must be clearly prejudicial to the defendant.' " 36 Kan. App. 2d at 332.

The Court of Appeals noted that Stevens·was not prejudiced by the State's failure to produce the deficient sample breath test results because defense counsel knew about the results prior to trial. 36 Kan. App. 2d at 332; see *State v. Barncord*, 240 Kan. 35, 43, 726 P.2d 1322 (1986). Regarding the Intoxilyzer 5000 maintenance records, the court stated:

"[D]uring cross-examination, Sergeant David Roughton, who was the custodian of the Intoxilyzer 5000 maintenance records at the Pittsburg Police Department, testified that the officer performing Stevens' breath test was supposed to record it in the log book but failed to do so. An expert witness was unnecessary when the records custodian himself admitted that the officer administering the breath test failed to follow procedure. Defense counsel failed to establish that there was anything in the paperwork for the Intoxilyzer 5000 which might require further investigation to aid Stevens' defense." 36 Kan. App. 2d at 332.

We agree with the Court of Appeals' reasoning. Although the State failed to produce the records ordered by the district court in a timely fashion, Stevens cannot demonstrate that he was clearly prejudiced by the delay. See *Barncord*, 240 Kan. at 43 (evidence not disclosed to the defendant before trial is not suppressed or withheld by the State if the defendant has personal knowledge thereof, or if the facts become available to the defendant during trial and if he or she is not prejudiced in defending against those new facts). As the Court of Appeals noted, the records custodian himself admitted that the proper procedure was not used. For these reasons, the district court did not abuse its discretion in failing to grant Stevens a continuance.

Issue 4: *Sufficient evidence supports Stevens' conviction for driving under the influence in Crawford County.*

Stevens next claims that there was insufficient evidence to support his conviction because the State failed to prove that the crime was committed in Crawford County. We previously stated our standard of review for sufficiency of the evidence: " '[W]hether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *Kesselring*, 279 Kan. at 679.

Venue is a question of fact to be decided by the jury. *State v. McElroy*, 281 Kan. 256, 264, 130 P.3d 100 (2006). It "may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and *reasonably inferred*. [Citations omitted.]" (Emphasis added.) *State v. Pencek*, 224 Kan. 725, 729, 585 P.2d 1052 (1978). Accordingly, venue need not to be established by a specific question and answer that the offense occurred in the particular county; rather, it may be established through other competent evidence. *State v. Griffin*, 210 Kan. 729, 731, 504 P.2d 150 (1972).

Officer Justice testified that he worked for the Pittsburg Police Department in Crawford County. On the night of the incident, he was on patrol duty when he was dispatched to a residence located at 118 West Madison for a criminal trespass complaint. He arrived within minutes. After gathering evidence, he arrested Stevens and transported him to the Pittsburg police station for testing.

The jury was instructed that to find Stevens guilty of driving or attempting to drive under the influence of alcohol, it had to find that, among other things, the act occurred "in Crawford County, Kansas."

The Court of Appeals concluded that, based upon this evidence, the jury could have reasonably inferred that the events occurred in Crawford County. Additionally, there was no evidence that Justice had been dispatched outside of his jurisdiction to respond to a call concerning criminal trespass, and generally he would not have

the authority to make an arrest as a law enforcement officer outside of his jurisdiction. 36 Kan. App. 2d at 335 (citing *State v. Miller,* 257 Kan. 844, 849, 896 P.2d 1069 [1995]). We agree that when the evidence is viewed in the light most favorable to the prosecution, it was sufficient to establish that Stevens committed the crime in Crawford County.

Issue 5: *The district court did not err in allowing Stevens' confession into evidence.*

Stevens asserts that the district court erred in allowing his "confession" into evidence. Specifically, he argues that his statements at the scene, *i.e.*, that he had driven the Jeep to the residence and that he had been drinking, were not knowingly and voluntarily given because he was not given warnings prior to custodial interrogation pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

As the Court of Appeals noted, Stevens never formally moved to suppress his statements, nor did he object to their admission at trial. As a general rule, a party must make a timely and specific objection to the admission of evidence in order to preserve the issue for appeal. *State v. Kunellis,* 276 Kan. 461, 477, 78 P.3d 776 (2003); see K.S.A. 60-404. This is true even if the district court had already denied a motion to suppress evidence prior to trial. *State v. Holmes,* 278 Kan. 603, 610, 102 P.3d 406 (2004). Here, because Stevens failed to move to suppress the statements prior to trial, and failed to object to the admission of the statements at trial, he failed to preserve the issue for appeal.

Stevens argues for application of an exception to the general rule: when consideration of the theory is necessary to serve the ends of justice or to prevent denial of a fundamental right. See *State v. Schroeder,* 279 Kan. 104, 116, 105 P.3d 1237 (2005). Under this case's facts, we see no need to apply this exception. See *State v. Bornholdt,* 261 Kan. 644, 932 P.2d 964 (1997). In *Bornholdt,* as in the instant case, the defendant failed to object at trial to the introduction of his confession into evidence on K.S.A. 60-460(f) grounds or raise any question that his statements were other than voluntarily given. Nor, as in the instant case, was there any

sort of voluntariness hearing, *e.g.*, pursuant to K.S.A. 22-3215. The *Bornholdt* court held:

> "*If this were not a case where a hard 40 sentence had been imposed,* this issue would fail because of our rule that in order to raise the admissibility of evidence as an issue on appeal, the record must show a timely and specific objection. K.S.A. 60-404; see *McKissick v. Frye,* 255 Kan. 566, Syl. ¶ 3, 876 P.2d 1371 (1994)." (Emphasis added.) 261 Kan. at 651.

Furthermore, *State v. Miles,* 233 Kan. 286, 296, 662 P.2d 1227 (1983), states:

> "Kansas procedure does, consistent with the United States Constitution, require that appellant's confession be challenged prior to or during the trial or not at all. The appellant's failure to request a hearing or timely object to the admission of his confession waives his right to raise that issue for the first time on appeal unless the opportunity to object did not exist."

The district court did not err in admitting evidence of these statements.

Issue 6: *Stevens was not deprived of his right to a fair trial by cumulative error.*

Stevens also argues that cumulative error requires reversal of his conviction and remand for a new trial. Cumulative trial error requires reversal when the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. However, if the evidence is overwhelming against the defendant, reversal is not required. *State v. Bryant,* 276 Kan. 485, Syl. ¶ 7, 78 P.3d 462 (2003).

Having found no previous error, Stevens' cumulative error argument fails. See *State v. Torres,* 280 Kan. 309, 335, 121 P.3d 429 (2005).

Issue 7: *The district court erred in ordering Stevens to pay attorney fees to BIDS before taking into account his financial condition.*

In its cross-petition for review, the State argues that the Court of Appeals erred in reversing the district court's order concerning the attorney fees to be reimbursed to BIDS. The State's argument necessitates interpretation of K.S.A. 2006 Supp. 22-4513 and K.S.A. 2006 Supp. 21-4603d(i). The interpretation of a statute is a

question of law over which this court exercises unlimited review. *State v. Rogers*, 282 Kan. 218, 222, 144 P.3d 625 (2006).

At sentencing, the district court generally ordered Stevens to reimburse BIDS for "attorney fees" incurred on his behalf as a condition of his probation. Before determining the monthly payment amount, the district court questioned Stevens about his income at his current job. Stevens stated that his net income was approximately $400 every 2 weeks. Based upon this figure, the court ordered Stevens to pay not less than $50 per month in fines, court costs, and attorney fees. The court did not, however, state the specific amount of attorney fees to be reimbursed to BIDS.

On appeal, Stevens argued that the district court erred in assessing the amount of attorney fees to reimburse BIDS. Specifically, he asserted that the court's failure not only to assess the specific amount of attorney fees at sentencing but also to include those fees when considering the amount he could pay violated the requirements of both K.S.A. 2006 Supp. 22-4513 and K.S.A. 2006 Supp. 21-4603d(i).

The first statute cited by Stevens, K.S.A. 2006 Supp. 21-4603d(i), discusses dispositions for crimes committed after July 1, 1993. It requires a district court to order a defendant to reimburse BIDS for attorney fees and other defense services. The statute provides:

"[T]he court shall order the defendant to reimburse the state general fund for all or a part of the expenditures by the state board of indigents' defense services to provide counsel and other defense services to the defendant. In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment. The amount of attorney fees to be included in the court order for reimbursement shall be the amount claimed by appointed counsel on the payment voucher for indigents' defense services or the amount prescribed by the board of indigents' defense services reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less."

Similarly, the second statute cited by Stevens, K.S.A. 2006 Supp. 22-4513, requires a district court to order a convicted defendant to reimburse BIDS for attorney fees and other defense services:

"(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.

"(b) In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment."

K.S.A. 2006 Supp. 22-4513 was discussed in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). There, we held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. [now 2006 Supp.] 22-4513 *must* consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose." 281 Kan. 538, Syl. ¶ 1. This court further noted that the legislature, in 22-4513(a), stated unequivocally "that the BIDS fees 'shall' be taxed against the defendant." 281 Kan. at 543.

The Court of Appeals agreed with Stevens:

"The reasoning in *Robinson* is applicable here. K.S.A. 2005 Supp. 22-4513(a) imposes a mandatory duty on the trial court to tax BIDS fees against the defendant. This language is not conditional. Moreover, there is no indication that the defendant must request that the trial court tax the BIDS fees before considering the defendant's financial resources and the burden that payment of the fees will impose. Therefore, this issue may be raised for the first time on appeal.

"We read K.S.A. 2005 Supp. 22-4513(a) as requiring the trial court to first tax as costs the amount claimed by BIDS or the amount set forth in the BIDS reimbursement tables, whichever amount is less. In her concurring opinion in *Robinson*, Justice Luckert noted that the plain language of K.S.A. 2005 Supp. 22-4513(a) requires the trial court 'to assess either (a) the amount of actual

expenditures for providing counsel and other defense services or (b) the amount allowed by the BIDS' defense reimbursement tables, whichever is less.' 281 Kan. at 550. Once this figure has been taxed, K.S.A. 2005 Supp. 22-4513(b) requires the trial court, in setting the amount and payment method of the fees, to consider the defendant's financial resources and the nature of the burden that repayment of those costs will impose on the defendant. Consequently, K.S.A. 2005 Supp. 22-4513(b) requires the repayment of those costs be balanced against the defendant's financial ability to repay them. When the trial court has failed to tax a specific amount claimed by BIDS, the trial court is unable to adequately evaluate the amount of such sum the defendant is able to pay." 36 Kan. App. 2d at 343-44.

Consequently, the Court of Appeals reversed and remanded for the district court to tax a specific amount of attorney fees claimed by BIDS and to then determine the amount and method of payment of such sum that Stevens is able to pay. 36 Kan. App. 2d at 343-44.

In criticizing the Court of Appeals' opinion, the State again argues that Stevens failed to ask for relief from the trial court, thereby barring relief on appeal. In the alternative, it argues that the court did not commit reversible error by failing to assess the exact amount of the attorney fees against Stevens.

We acknowledge that as a general rule, an issue not raised before the district court will not be considered on appeal. *State v. Shopteese,* 283 Kan. 331, 339, 153 P.3d 1208 (2007). Here, because the statute places mandatory duties upon the district court, consideration is necessary to serve the ends of justice. See *State v. Wiegand,* 275 Kan. 841, 844-45, 69 P.3d 627 (2003). As the Court of Appeals points out, K.S.A. 2006 Supp. 22-4513(a) requires that the district court first tax as costs the lesser of two particular amounts as BIDS reimbursement. Once that amount has been taxed, the repayment of those costs must be balanced against the defendant's financial ability to repay them per subsection (b). When the district court initially fails to tax a specific amount of attorney fees claimed by BIDS, then obviously that court is unable to adequately evaluate the amount of such unknown sum that the defendant is able to pay.

Accordingly, we affirm the Court of Appeals. We reverse and remand for the district court to tax a specific amount of attorney

fees claimed by BIDS and to determine the amount and method of payment of such sum that Stevens is able to pay.

Affirmed in part, reversed in part, and remanded for further proceedings.

JOHNSON, J., not participating.

LARSON, S.J., assigned.