NOT DESIGNATED FOR PUBLICATION

No. 115,385

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellee*,

v.

TERRY LOGAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 22, 2017. Affirmed in part, reversed in part, and vacated in part.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Jan Jarman*, assistant city attorney, for appellee.

Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.

PER CURIAM:  Terry O. Logan was convicted in district court of one count of driving under the influence (DUI), one count of transporting an open container, one count of driving with a suspended license, one count of refusing to submit to a preliminary breath test (PBT), and one count of refusing to submit to an evidentiary breath test. On appeal, Logan argues the following:  (1) the City of Wichita (City) failed to present sufficient evidence to sustain his convictions of DUI and driving with a suspended license; (2) his convictions for refusing to submit to a PBT and refusing to submit to an evidentiary breath test were unconstitutional; and (3) cumulative errors deprived him of a fair trial. We agree with Logan that his conviction for refusing to submit to an evidentiary

1

breath test must be reversed because the ordinance upon which it is based is unconstitutional, but we otherwise affirm the district court's judgment.

On the evening of January 22, 2015, Wichita Police Department Officer Wesley Jensen was on patrol when he was dispatched to a welfare check. When he arrived at the scene, Jensen found a blue minivan stopped in the roadway in the middle of one of the lanes with a man inside who was "slumped over" the center console. The minivan's engine was not running. Jensen approached the vehicle and discovered Logan "sitting in the driver's seat . . . kinda just like leaning towards the right." Jensen noted that Logan's "eyes were closed, [and] it appeared as if he was sleeping or had passed out." After Jensen hit the window to get Logan's attention, he opened his eyes and appeared disoriented.

Jensen was concerned about Logan's wellbeing and opened the door to see if he needed medical attention. When Jensen opened the door, he "noticed a very strong odor of alcohol coming from the vehicle," and he saw that Logan's eyes "were extremely watery and bloodshot." He also found an alcoholic beverage sitting in the center console. Jensen testified to his certainty that the vehicle's keys were in the ignition.

Jensen requested assistance from an officer who specialized in DUI investigations. Officer Aaron Stark arrived at the scene, and Jensen handed the case off to Stark for further investigation. Stark testified that when he arrived at the scene, Logan was "standing outside his vehicle, leaning up against [it]." Stark also testified that "[t]here was a puddle of some sort on the ground next to [Logan's] leg," and that Logan's eyes were "watery and bloodshot" and that Logan's mouth emitted a "very strong odor" of alcohol.

Logan admitted to Stark that he had been drinking but denied that he had been driving. Since Logan and Stark were in the middle of the street—where Jensen first found Logan—Stark walked Logan over to a parking lot that was between 30 to 40 feet from where Logan's vehicle was parked. Stark noted that Logan "had a difficult time walking

2

over there," and that Logan's trouble walking seemed to be from impairment, rather than from an injury. When the two were in the parking lot, Stark administered field sobriety tests. Stark testified that Logan admitted that he would not perform well on the tests, explaining that he had an issue with balance.

Stark first administered the "walk-and-turn" test, and Logan scored six clues on this test. Next, Stark administered the "one-leg-stand" test, and Logan again indicated that his lack of balance would prevent him from successfully completing the test. During that test, Logan lost his balance and had to finish the test early. Stark testified that Logan's performance on the tests "showed significant impairment."

Stark then asked Logan to submit to a PBT, and Stark gave Logan the warnings associated with that test. Logan refused to submit to the PBT. When the "BAT van" arrived, Stark read the implied consent advisories to Logan and asked him to submit to an evidentiary breath test. Logan refused to submit to this test as well. Stark testified that while he was completing the paperwork, Logan "decided that he needed to go to the bathroom again and peed inside [the] van."

The City charged Logan with violating the following Wichita Municipal Code provisions: (1) impeding the flow of traffic (§11.24.010); (2) refusing to submit to a PBT (§11.38.157); (3) DUI—incapable of safely operating (§11.38.150[a][2]); (4) refusing to submit to an evidentiary breath test (§11.38.140[a]); (5) transporting open alcoholic beverages (§11.38.158[b]); (6) driving with a suspended license (§11.42.030[c]); and (7) an alternative count of DUI (§11.38.150[c]). Logan was convicted in municipal court of all counts except the alternative count of DUI, which the court dismissed, and the charge of impeding the flow of traffic, for which he was found not guilty.

Logan then appealed his convictions to the Sedgwick County District Court, which held a bench trial on October 22, 2015. Jensen and Stark both testified and related their

accounts of the events in question. Lana Goodson of the Sedgwick County Regional Forensics Science Center testified that a standard lab test of the contents of the container found in Logan's vehicle indicated that the container held alcohol. The lab report, a certified copy of Logan's driving record, and other exhibits were admitted into evidence.

Logan testified in his own defense. He contended that he was parked at the stop sign, and "not in the middle of the street" as Stark and Jensen had described. Logan explained that he parked his vehicle at the intersection "to get some salvage stuff out of the dumpster" at the Quik Trip, and that he carried the items he retrieved to his house, which was approximately one and a half blocks from the Quik Trip. He testified that he made the trip from the Quik Trip to his house approximately six times. Logan testified that he drank only one or two beers on the night of his arrest.

Logan testified that he did not park the van at the intersection, but that his "friend Tom parked it." Logan first testified that "Tom" went home after he parked the van, but then he said that he actually did not know where "Tom" went. When asked how he came to be in the driver's seat, Logan testified that he got in the car because he "was gonna sleep a little bit and go on home and spend the rest [of] the night and [he] never got there." Finally, Logan contended that contrary to the testimony of the officers, the keys to his vehicle were not in the ignition.

After hearing the evidence, the district court found Logan guilty of the charges. The district court sentenced Logan as follows: (1) 12 months in jail and a $1,250 fine for the DUI conviction; (2) 12 months in jail and a $250 fine for the conviction of driving with a suspended license; (3) 6 months in jail for the conviction of transporting an open container; (4) 12 months in jail and a $1,250 fine for the conviction of refusing to submit to an evidentiary breath test; and (5) no fine for the conviction of refusing to submit to the PBT. The district court ordered Logan to serve 12 months of nonreporting probation subject to his payment of the fines and court costs. Logan timely appealed.

On appeal, Logan argues the following: (1) the City failed to present sufficient evidence to sustain his convictions of DUI and driving with a suspended license; (2) his convictions for refusing to submit to a PBT and refusing to submit to an evidentiary breath test were unconstitutional; and (3) cumulative errors deprived him of a fair trial. We will address each of these issues in turn.

*Sufficiency of the evidence for DUI and driving with a suspended license*

Logan first claims the City presented insufficient evidence to sustain his convictions of DUI and driving with a suspended license. Specifically, Logan argues there was insufficient evidence to prove beyond a reasonable doubt that he was attempting to operate a vehicle in order to find him guilty of DUI. As for the conviction of driving with a suspended license, Logan argues there was insufficient evidence that he was driving a vehicle. He also argues that the certified copy of his driving record was insufficient evidence to support this conviction.

The City, in turn, argues that it presented sufficient evidence to prove that Logan was operating or attempting to operate a vehicle. The City also argues that there was sufficient evidence to support the conviction of driving with a suspended license.

When this court reviews convictions that are challenged for sufficiency of the evidence, we review the evidence in a light most favorable to the prosecution to decide "whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). When an appellate court must make a sufficiency determination, the court "does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility." *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Wichita Code § 11.38.150(a)(2) addresses driving under the influence of alcohol and/or drugs and states: "No person shall operate or attempt to operate any vehicle within the city while . . . [u]nder the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." The language of the ordinance is nearly identical to K.S.A. 8-1567(a)(3); both laws prohibit the operation or attempted operation of a vehicle while under the influence of alcohol or drugs.

Here, Logan does not question the sufficiency of the City's evidence as to whether he was under the influence of alcohol. Rather, he argues that the City's evidence was insufficient to prove beyond a reasonable doubt that he was attempting to operate a vehicle. Logan cites *State v. Darrow*, 304 Kan. 710, 374 P.3d 673 (2016), to support his argument. In *Darrow*, the stipulated evidence established that law enforcement officers discovered the defendant's vehicle parked at the end of a dead-end street. The defendant was the only occupant of the vehicle, and she was asleep in the driver's seat when the officers found her. The vehicle was running because exhaust smoke was coming from the mufflers. When the officers attempted to arouse the defendant, she "started to reach down and fumble with the gear shift, but the car stayed in park." 304 Kan. at 712.

The issue before the court in *Darrow* was whether there was sufficient evidence to establish that the defendant was attempting to operate her vehicle to support a conviction of DUI. In its decision, the court acknowledged that "[m]ovement of the vehicle is not required in order to convict a defendant of DUI under the theory that defendant *attempted* to operate the vehicle." 304 Kan. at 714 (quoting from *State v. Kendall*, 274 Kan. 1003, 1009-10, 58 P.3d 660 [2002]). However, the court explained that the word "operate"—in the context of K.S.A. 8-1567—"means to 'drive'; 'driving' requires movement of the vehicle; therefore, 'operating' requires movement of the vehicle, and an 'attempt to operate' means to attempt to move the vehicle." *Darrow*, 304 Kan. at 714. The court also explained that "[t]aking actual physical control of the vehicle is insufficient to attempt to operate that vehicle without an attempt to make it move." 304 Kan. at 714.

Ultimately, the *Darrow* court determined that the evidence in that case was sufficient to establish that the defendant was attempting to operate a vehicle. 304 Kan. at 718-20. In doing so, the court recognized that circumstantial evidence is sufficient to support a conviction. 304 Kan. at 716. The court also recognized that an appellate court is required to view the evidence in the light most favorable to the State. 304 Kan. at 718. Upon reviewing the evidence in the light most favorable to the State, the court concluded that it was "compelled to sustain the integrity of the factfinder's determination and hold the evidence was legally sufficient to support the verdict." 304 Kan. at 720.

Logan focuses on the language from *Darrow* stating that an attempt to operate a vehicle means an attempt to move the vehicle. 304 Kan. at 714. Logan argues that in his case, "no one saw [him] drive the vehicle, [he] testified that someone else had driven the [van], and even though he was parked at a stop sign and asleep at the wheel, such evidence [is insufficient to establish] an attempt to move the vehicle."

A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Kansas is replete with caselaw regarding DUI convictions based on circumstantial evidence. For instance, in *Kendall*, the police found the defendant's truck in the middle of a residential street, with the engine running, lights on, and the transmission in neutral. The defendant was slumped over the steering wheel, wearing his seatbelt, with his foot on the brake, but apparently asleep. When the defendant awoke, he told the officers that he had not been driving and claimed that someone else had driven the vehicle to the location where he was discovered. Our Supreme Court decided that even if the jury believed the defendant did not move his vehicle while under the influence of alcohol, "there was

7

sufficient evidence to convict [him] of DUI on the alternative theory that he attempted, but failed, to operate the truck." 274 Kan. at 1012.

In *State v. Stevens*, 285 Kan. 307, 172 P.3d 570 (2007), *overruled on other grounds by State v. Littlejohn*, 298 Kan. 632, 319 P.3d 136 (2014), a law enforcement officer was called to a residence to investigate a criminal trespass complaint. Upon arrival, the officer saw a Jeep parked in the street with two people sitting in its front seat. As the officer approached, he saw the defendant exit the driver's side of the Jeep, walk toward the front of the residence, and knock on the door. At that point, the officer informed the defendant that the resident of the house did not want him on the property. After backup arrived, the officer approached the Jeep to contact the passenger. The officer then saw alcoholic beverage cans in both the driver's side and passenger's side door cup holders. He also noticed a brown paper bag that appeared to contain a liquor bottle with the seal broken. The Jeep key was in the ignition.

Our Supreme Court concluded there was sufficient evidence to support the charge of an attempt to operate a vehicle under the influence of alcohol. 285 Kan. at 319. As to whether there was sufficient evidence to establish that the defendant had attempted to operate the Jeep, the court stated:

> "In viewing this evidence in the light most favorable to the prosecution, a jury could have reasonably inferred that by placing or leaving the key in the ignition and leaving the passenger in the Jeep's front seat as he knocked on the door, [the defendant] had intended to drive away from a house, where clearly he did not reside, within a short period of time after exiting the driver's seat." 285 Kan. at 319.

Finally, in *State v. Woodward*, No. 94,221, 2006 WL 1902512 (Kan. App. 2006) (unpublished opinion), *rev. denied* 282 Kan. 796 (2006), this court upheld the defendant's DUI conviction after law enforcement officers found the defendant passed out in the driver's seat of a car parked in a pasture. The engine of the defendant's vehicle was not

8

running when the officers found him. When the officers spoke with the defendant, he appeared to be intoxicated and admitted to drinking that night. Also, the officers found a 12-pack of beer, with one open bottle on the floorboard of the car. The defendant denied that he was driving that night. Instead, he told officers that his friend "Jerry" was responsible for driving, although the defendant could not provide the officers with additional information about "Jerry." 2006 WL 1902512, at *2. Considering all the evidence, the *Woodward* court determined there was sufficient circumstantial evidence to establish a reasonable inference that the defendant was *operating the vehicle*. 2006 WL 1902512, at *4.

Returning to our facts, Jensen found Logan's blue minivan stopped in the middle of the road, even though there was a parking lot within 30 to 40 feet from where the vehicle was parked. Jensen discovered Logan sitting in the driver's seat, but he appeared to be sleeping or had passed out. The minivan's engine was not running, but the keys were in the ignition. When Jensen opened the door, he "noticed a very strong odor of alcohol coming from the vehicle," and he saw that Logan's eyes "were extremely watery and bloodshot." Logan testified that he did not park the van at the intersection, but that his "friend Tom parked it." He explained the van was parked at the intersection "to get some salvage stuff out of the dumpster" at the Quik Trip. When asked how he came to be in the driver's seat, Logan testified that he got in the car because he "was gonna sleep a little bit and go on home and spend the rest [of] the night and [he] never got there."

Although Logan offered a potentially innocent explanation for how he was found in the vehicle, it was within the fact-finder's province to weigh the evidence at trial. Our court's job on appeal is to review the evidence in the light most favorable to the prevailing party. *Rosa*, 304 Kan. at 432-33. The circumstantial evidence, when viewed in a light most favorable to the City, was sufficient to prove beyond a reasonable doubt that Logan attempted to operate—and did operate—his vehicle on the night in question.

9

Considering that evidence along with the overwhelming evidence of Logan's intoxication, we conclude there was sufficient evidence to support his conviction of DUI.

Logan also challenges the sufficiency of the evidence to support his conviction of driving with a suspended license. First, in one sentence in his brief, Logan asserts that "[t]he fact that [he] was in the driver[']s seat of an unengaged, parked vehicle is insufficient to prove that [he] was guilty of driving while suspended." However, for the reasons we have already explained, the circumstantial evidence, viewed in the light most favorable to the City, was sufficient to establish that Logan had driven his vehicle on the night in question.

Logan also argues that the "only evidence of [his] prior convictions for driving while suspended and DUI came in the form of the City's certified driving record," and since there were no journal entries, the evidence was insufficient to prove "the validity of those conviction[s]." Logan cites *State v. Neal*, 292 Kan. 625, 258 P.3d 365 (2011), to support his claim, but *Neal* does not address the evidentiary requirements to support a conviction of driving with a suspended license. Instead, *Neal* addresses the prosecutor's burden of proving the defendant's criminal history score at sentencing and whether the defendant was represented by counsel in his prior convictions. 292 Kan. at 627. Because Logan has failed to support his point with any pertinent authority, we deem the argument abandoned. See *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015).

Moreover, the certified copy of Logan's driving record, which was admitted into evidence at trial without objection, is not included in the record on appeal, so we are unable to review the records the City offered to establish that Logan's driver's license was suspended on January 22, 2015. The party claiming an error occurred has the burden of designating a record that shows prejudicial error. Without such a record, an appellate court presumes the action of the trial court was proper. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

10

*Constitutionality of convictions for refusing to submit to testing*

Next, Logan lumps together his separate convictions for refusing to submit to a PBT and refusing to submit to an evidentiary breath test, claiming that both convictions violated his constitutional rights based on our Supreme Court's decision in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*). Logan acknowledges that he did not make this claim in district court, but he points out that an appellate court may consider a constitutional issue for the first time on appeal if the issue falls within one of three recognized exceptions:  (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court was right for the wrong reason. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

The City argues that Logan's convictions for refusing to submit to testing did not violate his constitutional rights. The City points out that our Supreme Court's holding in *Ryce I* only applies to a defendant's refusal to submit to an evidentiary breath test, and the case does not apply to a defendant's refusal to submit to a PBT. The City argues that *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), is controlling. The *Birchfield* Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but does not permit warrantless blood tests. 136 S. Ct. at 2185. The City raises no objection to Logan's attempt to raise his constitutional claim for the first time on appeal.

Interpretation of a statute is question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Likewise, the question of whether a statute is unconstitutional is a question of law subject to unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

11

In *Ryce I*, our Supreme Court held that K.S.A. 2014 Supp. 8-1025, which punishes a driver for refusing to consent to an evidentiary breath test, is facially unconstitutional because it is not narrowly tailored to serve the interests that the Kansas Legislature was trying to protect when it enacted the statute. 303 Kan. 899, Syl. ¶ 12. In light of the decision in *Birchfield*, our Supreme Court granted the State's motion for a rehearing in *Ryce I*. But our Supreme Court ultimately reaffirmed its holding in *Ryce I* that K.S.A. 2016 Supp. 8-1025 is facially unconstitutional. See *State v. Ryce*, 306 Kan. 682, 700, 396 P.3d 711 (2017) (*Ryce II*).

Here, the ordinance under which Logan was convicted for refusing to submit to an evidentiary breath test, §11.38.140, is substantially similar to K.S.A. 8-1025. Because K.S.A. 2015 Supp. 8-1025 has been declared facially unconstitutional by the Kansas Supreme Court, we find that Logan's conviction for violation of the substantially similar municipal ordinance must be reversed and his sentence for this conviction must be vacated.

As to Logan's conviction for refusing to submit to a PBT, we note that he received no sentence or fine for this conviction. In any event, we agree with the City that our Supreme Court's holding in *Ryce I* does not directly apply to a conviction for refusing to submit to a PBT. Moreover, Logan's brief fails to even cite the specific ordinance upon which he was convicted, and the brief makes no attempt to argue how *Ryce I* applies to a conviction under the ordinance in question. We conclude that Logan has failed to properly brief this issue. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

*Cumulative error*

Finally, Logan argues that cumulative errors deprived him of a fair trial. However, Logan's brief fails to allege any trial error whatsoever. An appellate court will find no

cumulative error when the record fails to support any claim of trial error. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). The fact that Logan's conviction for refusing to submit to the evidentiary breath test must be reversed on constitutional grounds does not support a claim of cumulative error.

In sum, Logan's conviction for refusing to submit to an evidentiary breath test must be reversed and his sentence for that conviction vacated because the ordinance upon which it is based is unconstitutional. However, we affirm the district court's judgment as to Logan's remaining convictions.

Affirmed in part, reversed in part, and vacated in part.